JAMES A. JOHNSON, Plaintiff in Error, *v.* THE JOLIET AND CHICAGO RAILROAD COMPANY, Defendant in Error.

ERROR TO COOK COUNTY COURT OF COMMON PLEAS.

The right of eminent domain, by which private property may be taken for public use, is a sovereign power, and may be exercised *ad libitum,* by the legislature, if just compensation is made the owner.

Unless the act authorizing a condemnation of property for the right of way, so directs, a notice of the intention to condemn need not be given.

Johnson *v.* Joliet and Chicago Railroad Company.

Special acts of incorporation for constructing railroads will be valid, notwithstanding the constitutional provision, requiring general laws for such purposes; without any recital by way of preamble, that the object could not be accomplished by general law.

It is not necessary that a jury shall be called, to aid in condemnations for right of way.

If the condemnation price is paid, (when the statute does not otherwise direct,) when demanded by suit, or otherwise, the parties entering upon the right of way will not be trespassers *ab initio.*

THE points raised, as well as the pleadings in this case, are very fully stated and discussed in the opinion of the court.

This cause was heard by J. M. WILSON, Judge, at November special term, 1858, of the Common Pleas Court.

B. S. MORRIS, for Plaintiff in Error.

BECKWITH, MERRICK & CASSIN, for Defendant in Error.

BREESE, J.   The right of eminent domain, by which private property may be taken for public use, is an inherent sovereign power, and can be exercised *ad libitum*, by making just compensation to the owner.   Section eleven, of Article thirteen, of our constitution, provides that " No person shall, for the same offense, be twice put in jeopardy of his life or limb ; nor shall any man's property be taken and applied to public use without the consent of his representatives in the General Assembly, nor without just compensation being made to him." (Scates' Comp. 73.)   With this limitation, the manner in which it shall be exercised is in the discretion of the legislature, so that it is invoked for public uses and purposes, and only when required by the public necessity.

The General Assembly of this State, having determined that a railroad from Joliet to Chicago, on a certain specified route, was a work of public necessity, on the 15th of February, 1855, incorporated a company, and gave them power to locate, make, construct, and finally complete and operate a railroad from the depot of the Chicago and Mississippi Railroad Company, at Joliet, in Will county, to the city of Chicago, in Cook county ; that said act provided that it should be lawful for said company to enter upon, and take possession of, and use, all such lands and real estate as might be necessary for the construction and maintenance of said railroad, provided the same should be paid for by the said company in damages, if any be sustained by the owner or owners thereof ; and that all lands taken and entered upon for the use of said corporation, not donated to said company, should be paid for, by said corporation, at such prices as might be mutually agreed upon by said corporation, and the

owner or owners of such lands; and in case of disagreement, that the price should be fixed, estimated and recovered in the manner provided for taking lands for the construction of public roads and canals, and other public works, as prescribed by the act concerning right of way, approved March 3rd, 1845. That by section 12 of said act, it was further provided, " that when the lands of any *femme covert*, person under age, *non compos mentis*, or out of this State, shall be taken in the construction of said railroad, as is provided by this act, the said corporation shall pay the amount that shall be awarded as due to the said last mentioned owners, respectively, *whenever the same shall be lawfully demanded*, together with six per cent. per annum. That to ascertain the amount to be paid to the persons named in this section, for land taken for the use of said corporation, it shall be the duty of the governor of the State, upon notice given to him by the said corporation, to appoint three commissioners, to be persons not interested in the matter to be determined by them, to determine the damages which the owner or owners of the land or real estate so entered upon by said corporation, has or have sustained by the occupation of the same, and it shall be the duty of said commissioners, or a majority of them, to deliver to said corporation a written statement of the award or awards they shall make, with a description of the land or real estate appraised, to be recorded, by said corporation, in the clerk's office of the county in which the land or real estate so appraised shall be, and then the said corporation shall be deemed to be seized and possessed of the fee simple of all such lands or real estate as shall have been appraised by the said commissioners."

It is under this act the plaintiff's land was entered upon, and sixty feet in width of the same, condemned for the track of the road, which the defendants actually took into their possession, and were using as part of their road.

In June, 1858, the plaintiff brought an action of trespass *quare clausum fregit* against them, to which the defendants plead this act of the General Assembly, and further pleaded— That at the time of committing the several trespasses complained of, the plaintiff was not a resident of this State, and that the defendant having organized under said act of the legislature, entered upon the construction of said railroad, and by a petition to the governor of this State obtained the appointment of three disinterested persons, to wit, on the 6th day of November, 1857, to condemn the said piece of land of the said plaintiff in the said declaration described, and determine the said plaintiff's damages in the premises. That said commissioners, to wit, Charles B. Farwell, Alexander Wolcott and

Eli S. Prescott, did, to wit, on the 11th day of November, 1857, under and by virtue of said appointment, proceed to condemn said piece or parcel of land, to wit, sixty feet in width, that is, thirty feet on each side of the centre line of said railroad as located and established across said lot six, the premises described in the declaration, and assess the damages of said plaintiff therefor, did condemn the same and assess the damages therefor at the sum of *one dollar*, which said sum defendant was, at the date of said assessment, and, since that time, always has been, ready, willing and able to pay to said plaintiff whenever the same should be demanded, and which said sum, with interest thereon, to wit, the sum of two dollars, the defendant now brings into court and deposits the same for the said plaintiff. That said appraisers having delivered a copy of their award in the premises to defendant, with a description of the land appraised, defendant caused the same to be recorded in the clerk's office of Cook county, where said piece or parcel of land is situated, to wit, on the 29th day of June, 1858. That said defendant entered the close of the said plaintiff for the purpose of causing such examinations and survey to be made as might be necessary to ascertain and determine the most advantageous route for the line whereon to construct said road, and for the purpose of taking possession of and using so much of the said piece or parcel of land as might be necessary for the construction and maintenance of its said railroad and the accommodadations requisite and appertaining thereto, and did then and there take possession of so much thereof as was indispensable for the purpose aforesaid, to wit, sixty feet in width—that is, thirty feet on each side of said railroad, as located and established across said block six, the premises in the declaration described, and did proceed to construct its said road, and lay the track thereof across and upon said piece or parcel of land, and from thence hitherto hath continued to keep and maintain its said road thereon, and to run and cause to be run over the same, at divers times, its engines, cars, etc.

To this plea the plaintiff filed a general demurrer.

The court overruled the demurrer, and the judgment of the court, in so doing, is the error assigned on the record.

The plaintiff contends that the plea is bad, and offers no defense to the action, and because the act to which it refers and is made the ground of defense, is in conflict with the constitution of this State, and therefore void.

It is said the plea is bad and offers no defense because it does not aver notice to the plaintiff of the intended proceeding to condemn the land, nor that the commissioners were sworn, nor was their award filed in time, nor is it specific.

Reference is made, in support of these objections, to the act of 1852, (Scates' Comp. 481.) It will be seen this act has no relation whatever to the case before us. The proceeding to condemn the land was by the mode specially pointed out in the charter itself, and no notice is required to be given, either actual or constructive, to persons out of the State. Nor has the act of 1845, (ib. 479,) any application, for the same reason.

The 12th section of the charter under which the commissioners acted, required neither notice to the owner nor that they should be sworn, nor indicates a day or time at or within which their report should be filed, or that it should describe minutely by metes and bounds, courses and distances, or with any particularity, the quantity taken for the road way. The reason why that section of the statute did not require notice, evidently is, because it applied only to cases where notices could not be given, or would be useless.

The law, then, to protect the interests of such persons, vested the appointment of commissioners in the highest officer of the government, evidently on the assumption that he would be especially watchful of the interests of the absent owners.

It is said in some cases, *Chase* v. *Hathaway,* 14 Mass. 222, and by this court in *Eddy* v. *The People,* 15 Ill. R. 386, that although a statute does not require notice, yet notice must be given, and that no proceeding ought to be sustained against a man unless he has some notice of it. And in 15 Wend. 374, it is said that private property cannot be taken without notice to the owner, yet that the legislature may prescribe the form and mode of notice. But it may be asked, how can a court prescribe a notice, its form and mode of service, in such cases? Should a court require notice, what other notice known to the common law is there than personal notice? Constructive notice by publication, is the creature of the statute, and courts cannot make law. Had the legislature in this case prescribed the ordinary notice, by posting or publishing in a newspaper, which the owner might never see, it will be perceived that his condition would be precisely as it is now, in case he should show he did not receive actual notice; and though such constructive notice, in a great majority of cases, would not reach a non-resident, yet all will admit he would be bound by it. Having power, then, by the common law to require notice, and no other than personal notice coming up to its requirements, the object and purposes of the law would be defeated in every case where the owner was non-resident—he living in India or Greenland. The legislature deemed it safe to repose the power to appoint commissioners where it was confided, having a due regard to the interests of non-resident proprietors. We cannot understand by what

authority courts shall say, in cases of this kind, where the State is exercising its right of eminent domain, and notice cannot be given, notice shall be given, when the law does not say so, or how they can require any other than personal notice, if they go to legislating and require notice.    The thing is impracticable.

Another point made by the plaintiff is, that the charter is in violation of that clause of the constitution which declares that " corporations not possessing banking powers or privileges, may be formed under general laws, but shall not be created by special acts, except for municipal purposes and in cases where, in the judgment of the General Assembly, the objects of the corporation cannot be attained under general laws."    Art. 10, Sec. 1, (Scates' Comp. 71.)

It is too late now to make this objection, since, by the action of the General Assembly under this clause, special acts have been so long the order of the day, and the ruling passion with every legislature which has convened under the constitution, until their acts of this description fill a huge and misshapen volume, and important and valuable rights claimed under them. The clause has been wholly disregarded, and it would now produce far-spread ruin, to declare such acts unconstitutional and void.    It is now safer, and more just to all parties, to declare, that it must be understood that in the opinion of the General Assembly, at the time of passing the special act, its objects could not be attained under the general law, and this, without any recital by way of preamble, as in the act to incorporate the Central Railroad Company.    That preamble was placed there by the writer of this opinion, and a strict compliance with this clause of the constitution would have rendered it necessary in every subsequent act.    But the legislature, in their wisdom, have thought differently, and have acted differently, until now our special legislation and its mischiefs are beyond recovery or remedy.

Another point is made, that this twelfth section, set out in the special plea, is in conflict with that clause of the sixth section of article thirteen of the constitution, which declares that " the right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy." (Scates' Comp. 73.)

This has reference only, and is so understood by all jurists, to suits or actions for the recovery of money in actions *ex contractu* or *ex delicto*.    It never has been considered by any court, as extending to the process in the exercise of the right of eminent domain, nor in cases of that description, nor in cases in chancery, and other cases which might be mentioned.    Highways are laid out by the public, over private property, streets laid out and widened in cities, through the instrumentality of commission-

Johnson *v.* Joliet and Chicago Railroad Company.

ers appointed to assess damages, and no question has ever been made of their legality. Unmitigated ruin and confusion would ensue, if all such acts were now to be ripped up and made void.

Nor do we see any conflict between that section and the eighth section, article thirteen, of our constitution, which declares " that no freeman shall be imprisoned or disseized of his freehold, liberties or privileges, or outlawed or exiled, or in any manner deprived of his life, liberty or property, but by the judgment of his peers, or the law of the land." This clause does not apply, and has never been made to apply, to cases of this description. This is a case clearly within the eleventh section of article thirteen, which we have cited and commented on. It is a proceeding in the exercise of the right of eminent domain by the State, to advance the public necessity, and supply a want. We have no doubt the legislature, in the exercise of this right, can, without notice of any kind, on an emergency of which they are to judge, take any man's property for public use, by making compensation, and prescribe the mode by which this compensation shall be ascertained.

The only real question in the case under this section is, was the compensation made ? The charter provides that it shall be paid when demanded, supposing, no doubt, there would be cases where damages might be assessed by commissioners, that would not be claimed. In the act of 1852, (Scates' Comp. 484,) provision is made for the payment of the damages assessed to nonresidents, by depositing the money with the county treasurer of the proper county.

Compensation may be said to be made, when it is so fully and amply provided for, and so securely, that there shall be no possible hazard incurred by the owner in obtaining it.

In this case, the damages, nominal in amount, were never demanded, and on the institution of the suit against the company, they were deposited with the clerk of the court, with more than compound interest, doubly compounded.

Some courts have held that the payment of compensation must precede the entry upon the land, and that is the safest and best rule, but it cannot be said, in this case, the defendants are trespassers *ab initio*, when, as to the compensation allowed, they have held it " until demanded, and when demanded by suit, paid the money into court." Some of the State constitutions require that the compensation allowed shall precede the enjoyment of the property. Ours does not, and the directions of the statute having been substantially, if not strictly, pursued, they ought not to be regarded as trespassers.

The judgment of the County Court of Common Pleas is affirmed.

*Judgment affirmed.*

WALKER, J., dissents.