LAURA M. CALDWELL *et al.* Defendants in Error, *vs.* COM-
MISSIONERS OF HIGHWAYS, ETC., Plaintiffs in Error.

*Opinion filed February 25, 1911—Rehearing denied April 6, 1911.*

1. HIGHWAYS—*what action by commissioners does not render
proceedings illegal.* The fact that the commissioners of highways
of the three townships interested in a proposed road met at a place
not in either township and agreed upon the time and place where
they would meet and examine the route of the proposed road and
hear reasons for or against laying out the same is not material
and does not affect the legality of the proceedings, where the meet-
ing to examine the route and hear reasons was held, after due no-
tice, at a place within one of such townships.

2. SAME—*fact that commissioners met and discussed matters
where they had no jurisdiction to act is not material.* The fact
that highway commissioners met and discussed the matter of is-
suing orders in payment of damages at a place where they had no
jurisdiction to take official action is not material and does not af-
fect the legality of the proceeding, where no orders were issued at
such meeting.

3. SAME—*when final order laying out road will not be regarded
as rescinded.* The final order of the highway commissioners of
three townships for laying out a road will not be regarded as re-
scinded because the road was not opened, as required by statute,
within two years from the final order, where the delay was caused
by litigation occasioned by the refusal of two of the nine commis-
sioners to join with the others in taking proper steps to open the
road, thus making necessary the institution and determination of a
*mandamus* suit to compel them to act.

4. SAME—*failure to give notice to remove fences is not ground
for a permanent injunction.* The fact that sixty days' notice was
not given by the commissioners to land owners to remove their
fences, as required by statute, is not ground for a permanent in-
junction against opening the proposed road, but, at most, only re-
quires a restraining order until such notice is given.

5. SAME—*land owner cannot be compelled to accept town or-
ders in lieu of money.* Section 17 of the Roads and Bridges act,
which provides that whenever damages have been allowed for
roads or ditches the commissioners may draw orders on their treas-
urer, payable only out of the tax to be levied for roads and ditches
when the money shall be collected or received, which shall be given
to the persons damaged, cannot be construed as compelling a land
owner to accept such orders in lieu of money.

6. SAME—*injunction will lie to prevent opening road until compensation is paid.* Land owners who have not agreed to accept in payment of their damages on account of the laying out of a road the town orders authorized to be issued by section 17 of the Roads and Bridges act, and who refuse to accept such orders in lieu of money, may enjoin the opening of the road until their damages are paid or tendered, but if the property has not been in use by the public but has remained in the possession of the owners the judgments for damages will not draw interest.

7. CONSTITUTIONAL LAW—*the constitution requires compensation for property to be paid in money.* Where the private property of a citizen is taken for public use against his will the constitution contemplates that compensation therefor shall be paid in money, and he cannot be compelled to part with his title and to accept in lieu of money, orders or other means of obtaining payment which he may have to enforce by legal proceedings, the expense of which will reduce the amount of compensation to which he is entitled.

WRIT OF ERROR to the Circuit Court of Champaign county; the Hon. SOLON PHILBRICK, Judge, presiding.

RAY & DOBBINS, for plaintiffs in error.

HERRICK & HERRICK, for defendants in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

There was a proceeding by the commissioners of highways of the towns of Scott and Mahomet, in Champaign county, and of the town of Sangamon, in Piatt county, to lay out a public road crossing lands of the defendants in error, Laura M. Caldwell and Grace E. Caldwell, on a line which was the boundary between the towns and counties. A final order was made laying out and establishing the road, and the attending expense and damage were divided between the towns and the part of the road which each town should open and keep in repair was allotted. At a meeting of the joint board a resolution was adopted that each town should issue orders, payable to the land owners, to the amount of their portion of the damages assessed and agreed

on, payable out of a tax to be levied and collected for that purpose. Orders were drawn by the commissioners of the towns of Scott and Mahomet, but Hiram Artman and A. J. Pike, two commissioners of the town of Sangamon, refused to join in drawing orders or to take any steps toward laying out the highway or paying any part of the damages. A petition was filed in the circuit court of Piatt county against Artman and Pike, as commissioners of highways of the town of Sangamon, praying for a writ of *mandamus* commanding them to join with the other commissioner in paying the portion of that town of the damages out of any funds on hand applicable to the purpose, and in case there were not sufficient funds on hand, then to draw orders on their treasurer payable only out of a tax to be levied when the moneys should be collected, and to proceed with all lawful diligence to do all acts and things necessary and lawful to be done for the opening of the road. The court awarded a peremptory writ, in accordance with the prayer of the petition, against Artman, and Harry Clark, the successor of Pike as commissioner. The Appellate Court for the Third District affirmed the judgment, and on a further appeal to this court the judgment of the Appellate Court was affirmed. (*Town of Scott* v. *Artman,* 237 Ill. 394.) A writ of *mandamus* was issued and served in accordance with the judgment, and a joint meeting of the commissioners of the three towns was held on March 9, 1909, in the town hall in the town of Scott in obedience to the writ, at which orders were issued by the several towns to pay the damages allowed and agreed upon. Among the orders so issued were orders for the amounts of judgments which had been entered for compensation and damages for the lands of defendants in error, and orders were tendered to them. They thereupon filed their bill in the circuit court of Champaign county praying for an injunction against the plaintiffs in error, the commissioners of highways, enjoining them from opening the highway. A preliminary injunction was granted, and

the bill was answered alleging the legality of the proceedings. Upon a hearing the court found that the proceedings were illegal and void and the temporary injunction was made perpetual. The record has been brought to this court by writ of error.

Upon the receipt of the petition for the highway a meeting was held in the city of Champaign February 20, 1906, outside of the territorial limits of the three townships, at which all the commissioners and the three town clerks were present, and the commissioners then agreed upon a time and place when and where they would meet to examine the route of the proposed road and hear reasons for and against laying out the same. The court found that this meeting was illegal and void because held at a place where commissioners could not exercise the functions of their offices and that all proceedings subsequent thereto were therefore illegal. When commissioners receive a petition for laying out a highway they are required by the statute to fix upon a time when and place where they will meet to examine the route of the road and to hear reasons for or against laying out the same, and ten days' notice of such meeting must be given for the information of persons interested and to give them an opportunity to be heard. The time agreed upon was March 3, 1906, and the place was Argo school house, in the town of Sangamon. The necessary ten days' notice was given by posting five notices in the most public places in each of the three townships in the vicinity of the proposed road. The commissioners could not take official action at a place outside of the three townships; (*People* v. *Carr*, 231 Ill. 502; *People* v. *Hepler*, 240 id. 196;) but no right of any person was injuriously affected, and all that was required was the concurrence or agreement of the several commissioners as to the time and place of meeting. The fixing of the time and place was a mere preliminary to the exercise of the jurisdiction to determine whether to grant or refuse the petition, and if there had been no meet-

ing at all for that purpose the validity of the proceedings would not have been affected. If the commissioners had agreed upon the time and place without any meeting, the agreement, if carried out, would not be void, and necessarily the place where they met made no difference. There was another meeting in the city of Champaign on October 20, 1906, after the final order laying out the road, and the commissioners then discussed the question of issuing orders in payment of damages, but no orders were issued, and the fact that the commissioners talked the matter over at a place where they had no jurisdiction to decide any question is immaterial. The proceedings for laying out the road were in all respects in accordance with the statute.

The complainants' had lands in both counties. Part of the lands was subject to an unassigned dower interest of their mother, Mary Caldwell, and their insane brother, Alvin Caldwell, had a life estate in the tract of 160 acres in Piatt county. The complainant Laura M. Caldwell was the conservator of Alvin Caldwell. Condemnation proceedings were instituted, and there was personal service of process upon the complainants and their mother, Mary Caldwell. Service was had upon Alvin Caldwell by delivering a copy of the summons to the complainant Laura M. Caldwell, his conservator. Compensation and damages were assessed and both parties appealed to the circuit courts of the respective counties. An agreement signed by the complainants and their mother, and by the complainant Laura M. Caldwell as conservator of Alvin Caldwell, was entered into, providing that the damages should be assessed to all the said parties jointly, at $848 for the lands in Champaign county and $1132 for the tract in Piatt county, and the complainants stipulated that they would prosecute no appeal from the order laying out the road and would not file any *certiorari* or injunction proceedings to hinder or delay the opening of the road. Judgments were entered in accordance with the agreement, and it is contended that the

judgments were invalid for the reason that they were in favor of all the persons interested in the land, jointly, whereas the damages should have been assessed separately. So far as the joint character of the judgments is concerned, the complainants were legally competent to make the agreement and must stand by it. The proper function of courts is to enforce contracts which parties have a legal right to make, and not to aid such parties to get rid of their agreements. Alvin Caldwell had only a life interest in the Piatt county tract, and after the entry of the judgments and before the bill in this case was filed he died and his estate came to an end. If the complainants will receive more than they otherwise would have received because the judgment includes damages to the life estate of Alvin Caldwell they have no reason to complain.

The court erred in finding that the proceedings for laying out the road were affected with any illegality.

It is further argued that at the time the bill was filed the order laying out the road was to be regarded as rescinded because the road had not been opened within two years from the final order. The commissioners, with the exception of two refractory members, had been using their utmost efforts to have the road opened, and the delay resulted from the refusal of two commissioners of the town of Sangamon to join in taking the necessary steps to that end. The refusal caused the litigation in the *mandamus* suit, and until that case was decided the commissioners could not open the road. We cannot construe the statute as applying to a case like this, where seven of the nine commissioners were endeavoring to open the road and were prevented by the action of two who would not do what the same statute required of them.

The argument sets up the further ground that sixty days' notice should have been given by the commissioners to the complainants to remove their fences, as required by the statute. The bill does not aver that notice was not

given, and if the fact existed it would not justify a perpetual injunction, but would only require a restraining order until notice should be given.

No tax had been levied for the payment of the damages but orders had been tendered to complainants in accordance with section 17 of the Road and Bridge act, which provides: "Whenever damages have been allowed for roads or ditches, the commissioners may draw orders on their treasurer, payable only out of the tax to be levied for such roads or ditches, when the money shall be collected or received, to be given to persons damaged." The bill alleged as ground for an injunction that the defendants had not paid the damages allowed to the complainants nor made any tender or offer of payment of the amounts assessed as damages, and it is insisted that the perpetual injunction was right because compensation had not been made for the property taken, as provided by the constitution. The defendants contended that payment of compensation had been made by the tender of orders not drawing interest and payable out of a tax to be levied in the future. The agreement which was before the court for the entry of the judgments was drawn with the provision that payment might be made in lawful orders of the respective towns, but that provision was stricken out before the agreement was signed. The courts are agreed that payment of compensation must be in money, but there is no uniformity of decision as to when payment must be made and whether security for payment is sufficient. The decisions rest upon different constitutional and statutory provisions, and the author of the chapter on eminent domain in 15 Cyc. says (p. 775) that the net result is a chaotic mass of decisions from which it is very difficult to deduce any settled principles. By our constitution condemnation without compensation is forbidden, and the natural meaning of the constitutional provision would be that private property is not taken for public use until compensation is made, or at least that the payment of compensation

and the taking of the property are to be concurrent acts. That would be the rule in any transaction between individuals where one is to acquire property upon payment of the price, and, of course, orders not drawn upon an existing fund cannot be regarded as payment. Courts have held that where no time is specified for payment and the State undertakes the payment of compensation, it is not necessary that the payment should precede the use of the property, and perhaps that doctrine is sustainable on the ground that the public faith is of such a character and so pledged to the performance of obligations of the State as to amount to payment. There is no good ground for extending such a rule to towns and local municipalities, for whose obligations the State assumes no liability. As a matter of justice, an owner should not be required to resort to legal proceedings to secure compensation for property which the constitution guarantees to him as a condition precedent to the right to take his property, and the only method of enforcing orders such as were tendered to the complainants would be by a resort to such proceedings. In a condemnation proceeding the owner cannot be made to pay costs, which would reduce by their amount compensation for his land, and the same rule ought to apply as to giving him something as compensation which he may be compelled to collect by bringing a suit. A just rule is stated in 2 Kent's Commentaries (339, note *f*) : "The settled and fundamental doctrine is that government has no right to take private property for public purposes without giving a just compensation, and it seems to be necessarily implied that the indemnity should, in cases which will admit of it, be previously and equitably ascertained and be ready for reception concurrently, in point of time, with the actual exercise of the right of eminent domain." Title does not pass until the compensation has been paid, and an injunction will lie to prevent a seizure where compensation has not been paid or tendered as the law requires. (Elliott on Roads and Streets, secs. 238-

242.) The decisions of this court are in harmony with that doctrine.

The case of *Johnson* v. *Joliet and Chicago Railroad Co.* 23 Ill. 202, was an action of trespass to real estate against the railroad company. There had been a condemnation under an act which provided that when the lands of a non-resident of the State were taken, the compensation awarded should be paid by the corporation whenever the same should be lawfully demanded, together with six per cent interest per annum. The owner of the land was a non-resident and the damages were assessed at one dollar, and when the suit was brought the railroad company brought into court two dollars and deposited the same for the plaintiff, and filed a plea alleging the facts and that since the condemnation it had always been ready, willing and able to pay the owner whatever sum should be demanded. The act did not require the railroad company to hunt up non-resident owners, but to have the money ready for them whenever they should appear and claim it. The court said that compensation might be said to be made when it was so fully and amply provided for, and so securely, that there could be no possible hazard incurred by the owner in obtaining it, which would not include orders to be paid out of a future tax not levied; but the court declared the proper rule by saying that some courts had held that the payment of compensation must precede the entry upon the land, and that such holding was the safest and best rule. The decision was that the railroad company was not a trespasser *ab initio* when it held the compensation ready for the owner, and paid it, with more than compound interest, when demanded.

In *Shute* v. *Chicago and Milwaukee Railroad Co.* 26 Ill. 436, there had been a proceeding to assess damages for right of way, and the court sustained the proceeding on a review of the same by writ of *certiorari*. It was objected that the act of incorporation was unconstitutional because it made no provision for compensation being made in the

first instance to the owner whose land was taken. This court sustained the act and said: "It is considered sufficient if provision is made for compensation, and if not paid the land cannot be taken. The company would be restrained, by injunction, from using it until the compensation allowed by the commissioners was actually paid or the company released by the owner from the payment." The same doctrine was applied in the case of a municipal corporation in *People* v. *Williams,* 51 Ill. 63, where the court had under consideration the seventh section of the act of February 24, 1869, providing for the location and maintenance of a park for the towns of South Chicago, Hyde Park and Lake. One point made was that no means were provided by the act for paying the compensation to be made to property owners, but the court regarded it as sufficient to say that by the fifth section of the act proceedings to condemn the land could be instituted and carried on under the law for condemning right of way, by which ample provision was made for the payment of the condemnation money before the land condemned could be appropriated. The court said: "If the damages assessed are not paid the park commissioners cannot occupy the land, for it is the well established doctrine of this court that in no other mode can an owner be deprived of his land through the exercise of the power of eminent domain,"—citing *Shute* v. *Chicago and Milwaukee Railroad Co. supra,* where the court had said that the company would be restrained, by injunction, from using the land until the compensation allowed by the commissioners was actually paid.

   *Townsend* v. *Chicago and Alton Railroad Co.* 91 Ill. 545, was a suit in ejectment against the railway company, which defended its right to possession under a condemnation in 1867 and proved that it offered to pay to the plaintiff's agent the amount of the award. The claim of the plaintiff was that the eleventh section of the defendant's charter was unconstitutional and void because it allowed

the taking of lands by condemnation proceedings before either ascertainment or payment of the compensation. Of course, an act authorizing the taking of private property before ascertainment of the compensation would be void under the present constitution, but the court said that as these proceedings were taken before the adoption of that constitution it did not fall within its provisions; that under like proceedings had under the act discussed, and other like acts of incorporation, many condemnations had been had and important rights of property acquired, and that it would not do to disturb them unless the law imperatively demanded it. With these remarks the judgment was affirmed.

In *Chicago, Santa Fe and California Railway Co.* v. *Phelps,* 125 Ill. 482, it was held that the railroad company had the right to enter upon the use of the property, pending an appeal by it from a judgment fixing compensation and damages for right of way, upon giving the appeal bond provided for in section 13 of the Eminent Domain act, conditioned for the payment of such compensation as might be finally awarded in the case. The court, in quoting that section, italicized the words "upon the use of the property," and said: "By such entry the petitioner only acquires the temporary use of the premises pending the litigation, and, so far as any constitutional question is concerned, we perceive no difference, on principle, between a case like this and one where a railway company enters upon the land of another for the purpose of making preliminary surveys and locating its line of road, and the right to do this is not questioned." Mere preliminary surveys and location of lines are not regarded as a taking of property and do not require compensation, and the court was doubtless influenced to authorize such an entry by the serious consequences that would result if the construction of a line of railroad could be prevented by an appeal by a single owner. Again, in *Atchison, Topeka and Santa Fe Railroad Co.* v. *Schneider,* 127 Ill. 144, the court laid stress upon the language of

section 13 by italicizing the words "the right to enter upon the use of the property" pending the appeal. In *Johnson v. West Side Elevated Railroad Co.* 160 Ill. 477, it was contended that the construction put upon section 13 of the Eminent Domain act in the above cases was erroneous, and if warranted by the language of the statute was in violation of the constitution. This court had affirmed the judgment for damages on the appeal, and the court said that there was no longer any ground for contention between the parties over the question of possession, and the decree dissolving an injunction against proceeding further in constructing the road was affirmed. In *Davis v. Northwestern Elevated Railroad Co.* 170 Ill. 595, the court quoted what was said in *Chicago, Santa Fe and California Railway Co. v. Phelps, supra,* to the effect that the petitioner only acquired the temporary use of the premises pending the litigation, which was not different from an entry for preliminary surveys and locating the line of the road.

This court has never decided that the property of a citizen can be taken from him for public use against his will without compensation in money, or that he can be paid with appeal bonds, orders or any other means of obtaining payment in the future. There has never been an intimation in any decision that after the compensation has finally been determined the property can be taken without payment of such compensation or entry made thereon for any purpose before such payment. It would not be a violation of the constitution to issue and deliver orders, under section 17 of the Road and Bridge act, to any owner of land willing to accept them, but the section could not be construed as compelling an acceptance in lieu of money. The defendants had not acquired the right to appropriate the lands of the complainants. The court, however, erred in perpetually enjoining the opening of the road based on a finding that the proceedings were illegal and that no road was laid out. The only right of the complainants was to an injunction

against the opening of the road until their damages should be paid, and as the public have not had the use of the property but it has remained in the possession and use of the complainants, the judgments will not draw interest.

The decree of the circuit court is reversed and the cause is remanded with directions to enter a decree in accordance with the views herein expressed, and enjoining the defendants from opening the road until the judgments entered under the agreement shall be paid to the parties entitled thereto or deposited with the clerks of the respective courts for the use of said parties.

*Reversed and remanded, with directions.*