E. W. Sann, Defendant in Error, v. A. D. Hosterman, Plaintiff in Error.

## Gen. No. 17,338.

1. CONTRACTS—*construction.* Where the proprietor of a poultry journal employs a person as "foreign advertising" representative and the contract provides that the term "foreign advertising" shall not apply to any line of advertising belonging strictly to the breeding, marketing or handling of poultry, but shall apply to advertising foreign to the poultry business, commissions may be recovered for securing advertisements of squabs or pigeons.

2. CONTRACTS—*effect of failure to comply with contract.* Where a contract of employment of an advertising solicitor provides that he shall be given copies of live advertising contracts that are in force, and that on a failure to furnish the copies such advertising contracts shall be considered as "new" business, if such copies are not furnished, commissions for such advertisements may be recovered.

Error to the Municipal Court of Chicago; the HON. CHARLES N. GOODNOW, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Affirmed. Opinion filed November 7, 1912.

CHARLES HUDSON, for plaintiff in error.

CHARLES S. GRAVES, for defendant in error.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

On February 19, 1910, E. W. Sann, defendant in error and hereinafter called plaintiff, commenced an attachment suit in the Municipal Court of Chicago against A. D. Hosterman, plaintiff in error and hereinafter called defendant, to recover commissions claimed to be due on advertising by virtue of a written agreement, which was entered into May 30, 1909, by and between F. S. Webb, engaged in the advertising business in Chicago under the name of F. S. Webb Special Agency, and defendant, a resident of Springfield, Ohio, and there engaged in the business of publishing a monthly journal or magazine, known as "Poultry Success." By written assignment by Webb, December 8, 1909, plaintiff acquired the right and title to all moneys due or to become due by virtue of said agreement from defendant to Webb, and plaintiff brought this suit in his own name under section 18 of the Practice Act. Under the attachment writ five corporations were summoned as garnishees, and their several answers disclosed that their respective indebtedness to the defendant aggregated the sum of $422.84. The defendant filed an affidavit of merits claiming that he had a good defense to plaintiff's claim except as to the sum of $88.38 which he admitted to be due plaintiff. At the trial without a jury the court sustained the attachment issue and found that defendant was indebted to plaintiff in the sum of $330.94, upon which finding, on January 26, 1911, judgment was entered against defendant for said amount and costs, and against the garnishees for their said respective in-

debtedness to defendant in favor of plaintiff. This writ of error is prosecuted to reverse the judgment.

It was provided by the terms of said agreement, among other things, that Webb was to act as the sole "foreign advertising" representative for the publication known as "Poultry Success," in the territory "both East and West," from May 30, 1909, to May 30, 1911, and was to use the equipment of his office and the effort and influence of himself and those connected with him to secure advertising for said publication; that Hosterman, the defendant, would pay Webb a commission equal to twenty-five per cent., for the first year of the period of the agreement, on the net amount of cash received by defendant on all orders or contracts for said "foreign" advertising in the territory mentioned, which the defendant accepted and inserted in said publication; that contracts for "foreign" advertising in force at the date of said agreement should, after one year, or at their expiration, be considered as "new" business; that defendant should within thirty days from the date of the agreement furnish to Webb "duplicate copies" of all live contracts or orders for "foreign" advertising in existence or in force in said territory at the date of said agreement, and should also furnish a statement showing commissions and cash discounts allowed to all advertisers and advertising agencies for all business coming through said agencies; that all "foreign" business for which defendant did not hold live contracts at the date of said agreement, and all "foreign" business for which defendant did at that time hold live contracts but of which defendant did not furnish said "duplicate copies" to Webb within said thirty days, should be considered as "new" business upon which Webb would be entitled to his said commissions; that defendant would pay to Webb all commissions not later than the 15th day of the month following the receipt by defendant of the moneys for the advertising, and also, on the 15th day of each month would render

to Webb a general statement showing the outstanding accounts created under the agreement, the balance due Webb on collections made and draft to cover same; that defendant would refer to Webb all "foreign" advertising contracts and correspondence for business received by defendant direct from advertising agencies or advertisers and which were not in accordance with the conditions of the rate card and the policy as agreed upon between the parties; that defendant would furnish to Webb, immediately upon their receipt by defendant, copies of all contracts and letters relating to the "foreign" advertising department; that defendant would furnish to Webb a sworn detailed statement of circulation for each month, and, wherever possible, with regular issues of competitive papers published in said territory, and that defendant would insert in his said publication in an appropriate place the name of said F. S. Webb Special Agency as representative covering said territory. There was a clause in said agreement defining what the term "foreign" advertising meant, as follows:

"The term 'foreign advertising' as used in this contract does not apply to or include the advertising of Poultry Stock, incubators, poultry raising appliances, poultry feed, poultry apparatus for feeding and watering, poultry eggs, poultry insect exterminators, poultry remedies or any line of advertising belonging strictly to the breeding, marketing or handling of poultry, but does include all general mail order, agricultural lines and advertising foreign to the poultry business and the advertising of manufacturers whose advertising in Poultry Publications is only an incident or a part or branch of their business, but whose main business in reality is along general lines, manufacturing and selling to all classes of trade."

It appears from the "statement of facts," certified to by the trial judge, that, during the last six months of the year 1909, and during January, 1910, the defendant published in his said journal or magazine many

advertisements; that from May 30, 1909, to the commencement of this suit Webb acted as sole "foreign advertising" representative for defendant's publication, expended considerable money in soliciting advertisements for said publication, and forwarded many advertisements to defendant to be published and which were published in said publication, for which defendant received certain sums of money, and on which the court allowed to plaintiff a twenty-five per cent. commission; that the court in making its said finding of the total indebtedness of defendant to plaintiff, viz., $330.94, allowed a twenty-five per cent. commission to plaintiff on five "advertisements of squabs or pigeons" for which defendant received the sum of $39.14; that defendant did not furnish to said Webb within thirty days from the date of the agreement, or at any time, "duplicate copies" of all live contracts or orders for "foreign" advertising in existence or in force at the date of said agreement, and that the court allowed plaintiff a twenty-five per cent. commission upon six advertisements, aggregating in amount the sum of $442.36, and which defendant claimed were published under contracts or orders in force at the date of the signing of said agreement; that defendant, however, furnished a certain "statement showing commissions, and cash discounts allowed to all advertisers and advertising agencies on existing or expired contracts relating to poultry and foreign business, coming through agencies;" that during the months mentioned defendant, without previously consulting Webb, departed frequently from the card rates by making quotations and contracting with various advertisers at less than regular card rates, did not furnish to Webb a sworn statement of circulation as provided in said agreement, or render a general statement on the 15th day of each month, or at any time, showing outstanding accounts, the balance due or amounts collected, or at any time insert in his said publication the name of said F. S. Webb Special Agency as representative.

Both parties introduced on the trial many letters written one to the other, relative to the matters in controversy, which letters are set forth in said "statement of facts."

Counsel for defendant here urges that the judgment should be reversed on the grounds that the finding and judgment are against the weight of the evidence and are excessive, and that the trial court erred in admitting certain improper evidence on the part of plaintiff and in refusing to hold certain propositions of law. Without discussing these several points, suffice it to say that we are of the opinion that the same are without merit.

Counsel also urges that the trial court erred in including in its finding commissions on said five "squab" advertisements, and argues that "squabs" are "poultry," that by the provisions of the agreement no commissions were to be paid by defendant on "poultry" advertisements and that from the correspondence and conduct of the parties it appears that both considered "squab" advertisements to be the same as "poultry" advertisements, i. e., not "foreign advertising" as defined in the agreement. We cannot say from the facts appearing in this record that both parties so considered "squab" advertisements. Neither can we say under the facts of this case that the court erred as contended by counsel.

Counsel further urges that the trial court erred in including in its finding commissions on certain advertisements, which it was claimed were published in defendant's publication by virtue of contracts or orders in force at the date of the signing of the agreement and which, therefore, were "old" contracts which Webb took no part in soliciting. The agreement specifically provided that within thirty days from the date of the signing thereof defendant should furnish Webb with "duplicate copies" of all existing contracts for "foreign advertising," and if he did not do so such contracts should be considered as "new" business up

on which commisions were to be paid. Although defendant did not comply with his covenant in this particular and failed to furnish the duplicate copies, counsel contends that certain statements or lists forwarded by defendant to Webb served the same purpose as the duplicate copies would have done, and that Webb acquiesced in the receipt of said statements or lists in lieu of said duplicate copies. Under the facts disclosed in this record we cannot agree with the contention. Neither do we think that the trial court erred in including in its finding the commissions mentioned. "The proper function of courts is to enforce contracts which parties have a legal right to make, and not to aid such parties to get rid of their agreements." Caldwell v. Highway Commissioners, 249 Ill. 366, 371. The judgment of the Municipal Court of Chicago is affirmed.

*Affirmed.*