(No. 34681.—

THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellant, *vs.* BUTLER COMPANY *et al.*—(ILLINOIS BRICK COMPANY, Appellee.)

*Opinion filed March 20, 1958—Rehearing denied May 23, 1958.*

LATHAM CASTLE, Attorney General, of Springfield, (GEORGE W. McGURN, FRANK S. RIGHEIMER, FRANK S. RIGHEIMER, JR., WERNER W. SCHROEDER, THEODORE W. SCHROEDER, and JAMES E. HASTINGS, all of Chicago, of counsel,) for appellant.

CONCANNON, DILLON, SNOOK & MORTON, of Chicago, (WILLIAM H. DILLON, ARTHUR A. SULLIVAN, and JOHN B. DILLON, of counsel,) for appellee.

Mr. JUSTICE HOUSE delivered the opinion of the court:

The Department of Public Works and Buildings filed an eminent domain petition in the circuit court of Cook County to acquire 32 parcels of land for the widening and improving of Route 55. Thereafter on October 29, 1957, the Department made a motion for immediate vesting of title to two tracts pursuant to the provisions of the 1957 "quick taking" amendment to the Eminent Domain Act. (Ill. Rev. Stat. 1957, chap. 47, pars. 1 *et seq.*) By an order entered on the same day, a hearing on the motion

was set for November 8. Illinois Brick Company, owner of the two tracts, filed a cross petition, and a motion to dismiss petitioner's motion on the ground that the amendatory act is unconstitutional. The trial court considered both motions at the hearing and entered a judgment order sustaining the motion to strike, dismissing petitioner's motion and declaring the amendatory act unconstitutional, illegal and void. The judgment is final and the appeal is directed to this court under section 12 of said act.

The amendatory act in question (H.B. 849, approved July 11, 1957) repealed those sections of the Eminent Domain Act embodying a previous "quick taking" statute, amended others and added new sections 2.1 to 2.10. (Ill. Rev. Stat. 1957, chap. 47, pars. 2.1 to 2.10.) Briefly, it provides that a motion may be filed subsequent to the petition for condemnation requesting the immediate vesting of such title as may be required. The motion must contain the legal description, the interest to be acquired, the formal schedule for execution of the project, the effect of the schedule, and the necessity. After a hearing fixed by the court, not less than 5 days later, such evidence shall be heard as the court considers necessary for a preliminary finding of just compensation. Notice of the hearing is required to be given each party to be affected except that any party being served by publication need be given notice only if the court so requires.

The court has discretionary power to appoint three appraisers to evaluate the property and report, and the court then makes a preliminary finding of the amount of just compensation. Upon payment into court of such amount plus an additional 25 per cent, the court enters an order vesting title in petitioner, fixing the date of such vesting and the date for taking possession and use of the property. Subject to certain conditions, including a hearing and an order of court, the owner may withdraw a maximum of

the amount of preliminary just compensation fixed by the court. Thereafter the final determination of just compensation proceeds as in the normal eminent domain case. If the amount deposited exceeds the amount finally fixed the excess is returned to petitioner, and if it is less the court is to order payment of the balance to the owner.

Defendant contends that the amendatory act violates sections 2 and 13 of article II of the Illinois constitution in that it authorizes the possession and vesting of title to private property prior to the final ascertainment and payment of just compensation therefor; and that the act makes no provisions for the ascertainment and payment of damages to the remainder where only a portion of the private property is taken. It is also contended that the act further violates the due-process clauses of both the State and Federal constitutions by failing to make adequate provisions to secure and effect payment of just compensation as finally determined. Other constitutional objections are raised which will be considered later in this opinion.

Defendant's argument is based largely upon our holding in the case of *Department of Public Works* v. *Gorbe,* 409 Ill. 211. Petitioner refers to the difference between the acts under consideration, and insists that the *Gorbe case* should be overruled insofar as it holds that compensation must always precede the taking. That case involved the constitutionality of a 1947 amendment to the Eminent Domain Act. (Ill. Rev. Stat. 1947, chap. 47, pars. 2a *et seq.*) The only contention there discussed and passed upon was that section 2a contravened section 13 of article II of our constitution in that it permitted the taking and possession of private property for public use and the vesting of title prior to the payment of just compensation to the owner of the property taken. The 1947 amendatory act was held unconstitutional in the *Gorbe case* on the ground assigned, based upon earlier decisions therein cited.

Petitioner insists that a number of factors were not considered by the court in the *Gorbe case* and that analysis will indicate that the constitutional provision does not support the interpretation that compensation must always be paid before the taking. Chief among these factors is the assertion that there is little change between the 1848 and 1870 constitutions and that the cases construing the earlier constitution did not require prior payment.

The applicable eminent domain provision of the 1848 constitution (section 11, article XIII) provides: "* * * nor shall any man's property be taken or applied to public use without the consent of his representatives in the general assembly, nor without just compensation being made to him." Section 13 of article II of the constitution of 1870 reads in part: "Private property shall not be taken or damaged for public use without just compensation. Such compensation, when not made by the state, shall be ascertained by a jury, as shall be prescribed by law."

In construing the 1848 provision this court, in the early case of *Johnson* v. *Joliet and Chicago Railroad Co.* 23 Ill. 124, at page 131, said: "Some of the State constitutions require that the compensation allowed shall precede the enjoyment of the property. Ours does not, * * *." Again in *Shute* v. *Chicago and Milwaukee Railroad Co.* 26 Ill. 436, at page 438: "This clause [section 11, article XIII] does not require, as in many other constitutions, that the compensation shall be made before the land is taken and used." Subsequently, in *Townsend* v. *Chicago and Alton Railroad Co.* 91 Ill. 545, the rule above quoted in the *Johnson case* was recited and the court, at page 547, said: "This is not a new question in this State, nor is it an open question. The law is well settled and we are not disposed to disturb it."

Certain cases are cited by defendant which it contends show that payment must precede the taking, including

*Rich* v. *City of Chicago,* 59 Ill. 286. There the primary question raised was the constitutionality of a statute which provided for ascertainment of compensation through an instrumentality other than the judicial department. That question was not passed on and the case was reversed for trial error. Prior payment was not an issue. In *Cook* v. *South Park Comrs.* 61 Ill. 115, a statute was construed to mean that no right to the land inured until payment of compensation. The opinion states, at page 121: "Even if the statute were in conflict with the constitution, the latter must control as the supreme law. But it is not. The statute provides that the title to the land, and the right to enter upon and use it, must follow the payment of the damages awarded." Strangely enough, in the same opinion the *Johnson* and *Shute cases* are cited as authority for prior payment. Despite the apparent deviation in one or two cases, the *Townsend case* correctly analyzed the problem, and there is no question but that the established rule under the constitution of 1848 permitted the taking prior to actual payment.

The 1870 constitutional provision is similar to that of the constitution of 1848. "Just compensation" is used in both and in the constitution of 1870 the provision for ascertainment of compensation by a jury was added. An examination of proceedings of the Illinois Constitutional Convention of 1870 reveals that four separate resolutions were offered, each providing for payment of compensation prior to the taking. (See Journal of Constitutional Convention, pp. 42, 48, 193 and 475; Debates and Proceedings of Constitutional Convention, vol. 1, pp. 88, 93, 155 and 858.) None of the resolutions was adopted, despite the repeated efforts to insert a specific provision requiring priority of payment. There was no discussion in the *Gorbe* opinion with respect to the intent of the framers of the constitution of 1870 since it was directed to the court's attention for the first time in a petition for rehearing.

In order to analyze the conclusion reached in the *Gorbe case* it is necessary to review and evaluate the cases upon which that conclusion was based. *People ex rel. Decatur and State Line Railway Co.* v. *McRoberts*, 62 Ill. 38, involved the question of proceeding under an eminent domain statute in effect at the adoption of the present constitution in the absence of a new act implementing the constitutional requirement for ascertainment of damages by a jury. The case held the parties could proceed under the old act but the condemnee was entitled to a jury hearing thereafter. The court went on to say that there was no right to enter upon and use the land until after a jury award and payment.

In *Caldwell* v. *Commissioners of Highways*, 249 Ill. 366, an attempt was made to pay by orders in the nature of anticipation warrants. It was held that such questionable obligations, particularly those of local municipalities, did not constitute compensation. Thereafter, it was stated that title does not pass until compensation has been paid.

The next case, *Moore* v. *Gar Creek Drainage Dist.* 266 Ill. 399, was an injunctive action by a land owner where a highway commissioner had granted a right of way to a drainage district without consent of the owner or any condemnation proceeding against him. The court granted the injunction and said further that no citizen shall be deprived of his property until compensation for the same has not only been fixed, but paid to him.

In *City of Winchester* v. *Ring*, 315 Ill. 358, payment of an award was allegedly not made within the time fixed by the trial court due to an appeal to this court. In holding that the time for appeal did not count, it was said that the right to enter arises not out of the order of condemnation but the payment of compensation and damages awarded.

*People ex rel. Hesterman* v. *Smart*, 333 Ill. 135, was decided upon the basis that an attempt to credit compensation for property taken in connection with a local improvement *pro rata* against all the installments of a

special assessment was manifestly against the legislative intent. The language of the *Moore case* was then cited with approval.

The last case cited on this point in the *Gorbe case* is *People ex rel. O'Meara* v. *Smith,* 374 Ill. 286. This was a *mandamus* action against the State to require condemnation proceedings for damages to the owner's property not taken. It was there held that the Court of Claims Act was unconstitutional and therefore the owner was entitled to have his damages assessed in an eminent domain proceeding. The statement was there made that payment in advance of invasion has been required since the 1870 constitution was adopted.

The early *McRoberts case,* although not involving the question of payment prior to taking, has had a strong influence on the subject with this court. Its attempt to define the effect of the new eminent domain constitutional provision was pure *dictum.* The *O'Meara* and *City of Winchester* cases, also cited in the *Gorbe* opinion, as well as *Mitchell* v. *Illinois and St. Louis Railroad and Coal Co.* 68 Ill. 286, and *City of Chicago* v. *McCausland,* 379 Ill. 602, not cited therein, are likewise *dicta.* Generally, *dictum* is defined as an expression or statement by the court on a matter not necessarily involved in the case nor necessary to a decision thereof. It is entitled to consideration as being persuasive, but, as a general rule, is not binding as authority or precedent within the rule of *stare decisis.* (21 C.J.S., Courts, 190; *People ex rel. Berline* v. *Lowenstein,* 297 Ill. 395.) Thus, while such cases may have been persuasive to the court, they were not binding.

An examination of the remaining three cases relied upon in *Gorbe* (as well as all others involving taking and damaging property), will reveal that this court has concerned itself primarily with the problem of affording ample protection to the landowner to assure that he will receive just compensation. It is noted that the cases arising since

the adoption of the 1870 constitution have failed to analyze and point out the reasons why our present constitution should require prepayment while the constitution of 1848 did not.

The rule laid down in *Department of Public Works* v. *Gorbe,* 409 Ill. 211, at page 215, reads: "Whatever the rule may be elsewhere, it is firmly settled in Illinois that the constitutional guaranty against the taking of private property for public use without just compensation prohibits the possession and use of private property until just compensation has been *fixed* and *paid.*" While the court had not theretofore been faced with the precise problem with respect to prior "fixing of compensation," we had held that prior "payment" was not required.

Section 13 of the Eminent Domain Act provides for entering, pending appeal, upon giving bond conditioned for the payment of such compensation as may be finally adjudicated. The constitutionality of this section has been upheld. *Davis* v. *Northwestern Elevated Railroad Co.* 170 Ill. 595; *Village of Prairie Du Rocher* v. *Schoening-Koenigsmark Milling Co.* 251 Ill. 341.

Section 14 of the act provides that compensation may be made to the county treasurer. That was done in the case of *City of Winchester* v. *Ring,* 315 Ill. 358, and no fault was found with the statute authorizing such procedure. Again, in *County of Cook* v. *Vander Wolf,* 394 Ill. 521, the award was ordered paid to the county treasurer where the title was in question. In commenting upon the procedure we said, at page 528: "Both the constitutional and statutory requirements of just compensation are satisfied when the amount ascertained as such is paid to the county treasurer for the benefit of the owners and parties interested in the premises."

In cases involving damages to land not taken it has been held that prior payment is unnecessary. In *Penn Mutual Life Ins. Co.* v. *Heiss,* 141 Ill. 35, cases from other juris-

dictions were relied upon, and we said at page 57: "It has been uniformly held in this country, that the compensation need not be paid before the taking,—it is sufficient that provision be made for compensation afterwards, provided the payment be made certain." See, also, *Parker* v. *Catholic Bishop of Chicago*, 146 Ill. 158; *People ex rel. Tyson* v. *Kelly*, 379 Ill. 297.

Despite the *dictum* heretofore mentioned in *People ex rel. O'Meara* v. *Smith*, 374 Ill. 286, it is stated, at page 288: "Our holding in *People* v. *Kingery*, 369 Ill. 289, demonstrates conclusively that plaintiff is entitled to have this judgment reversed, unless the 1939 statute referred to is constitutional. Section 13 of article 2 of the Illinois constitution makes absolute the right of a land owner to damages whenever his property is taken or damaged for public use. It makes no difference whether the damages are ascertained before or after the injury is inflicted. (*People* v. *Kingery, supra*, at page 294.)"

Section 13 of article II of the constitution covers both the "taking" and "damaging" in the following words: "Private property shall not be *taken* or *damaged* for public use without just compensation." The problem is thus presented, how can two diametrically opposed principles stem from the same clause of the constitution? The foregoing cases establish the principle that when property not taken is *damaged*, it makes no difference whether compensation is fixed and paid before or after the damage is sustained. On the other hand, the *Gorbe case*, if permitted to stand, establishes the principle that when private property is *taken* the just compensation must be fixed and paid before the State may take it.

After an exhaustive study of the authorities, we are of the opinion that section 13 of article II of the Illinois constitution does not prohibit the taking, possession, and use of private property by the State prior to the fixing and payment of compensation, provided of course, that the au-

thorizing statute adequately safeguards the right of the owner of such property to just compensation therefor. To the extent that *Department of Public Works* v. *Gorbe,* 409 Ill. 211, holds to the contrary, it is hereby overruled.

Before approaching the broader grounds of violation of the due-process clauses of the State and Federal constitutions asserted by the defendant, we digress to consider the contention that adequate notice is not provided by the amendatory act in question. Defendant alleges a violation of due process since section 2.2 of the act provides for a hearing on the motion for quick taking without notice to those to be served by publication. It is unnecessary for us to pass upon this question since all the parties to this action had notice and the alleged unconstitutional feature, if it does exist, is not of a character to render the entire act void. *Du Bois* v. *Gibbons,* 2 Ill.2d 392; *State of Illinois* v. *Milauskas,* 318 Ill. 198.

Defendant contends that the due-process clauses are violated because the amendatory act does not make reasonable, certain and adequate provision for payment of compensation finally adjudicated. It is argued that 125 per cent of the amount preliminarily ascertained to be just compensation may not suffice, and that this is recognized by section 2.6(a) which provides for payment of any balance remaining due because of insufficiency of the deposit and interest thereon.

It has been almost universally held in this country that the taking by a condemnor does not contravene due process merely because it precedes the ascertainment of what constitutes just compensation, provided that the owner be given adequate assurance of payment thereof. There is a wide variance, however, in the methods provided to assure full payment. Some jurisdictions have held that the deposit of a nonjudicially determined approximate value is sufficient. Others require deposits of amounts varying from 100 per cent to 200 per cent of the value fixed by court appointed

appraisers. Some writers on the subject would require a bond to secure fully the payment of the final award.

The statute before us requires a judicial preliminary determination of the adequacy of just compensation, requires the deposit of 125 per cent of the preliminary finding of value and requires the court to order payment of the amount finally ascertained as just compensation, if in excess of the amount deposited.

In addition to the foregoing safeguards fixed by the legislature, we are mindful of the fact that the condemnor in this case is a department of the State itself. The language used in *Lee* v. *United States,* 58 F.2d 879, may aptly be applied here, where it was said, at page 880: "These provisions, when carried into effect, followed by the taking of the property, amount to a pledge of the public faith and credit * * *. In such case it is unthinkable that Congress will not, with appropriate speed, provide the necessary money to discharge the judgment and interest to the date of payment, and this is all the Fifth Amendment requires in a case in which the sovereign is asserting the power of eminent domain."

We are of the opinion that it cannot be said that the procedure provided by the amendatory act puts an unreasonable hazard upon an owner that he will not receive just compensation, and therefore the due-process clauses are not violated.

A further violation of due process is alleged in that the amendatory act makes no provision for the ascertainment and payment of damages to the remainder of property where only a portion is taken, prior to the vesting of title in the petitioner. It is elementary, and recognized by both parties, that "just compensation" includes the damages, if any, to that part of a tract not taken. Section 2.2(c) of the act provides that the court shall make a preliminary finding of just compensation, and we cannot assume that the trial court will ignore the question of the damages to

the remainder. The argument that nonresident owners would be offered no opportunity to file a cross petition raising the question of damages to the remainder is not available to the defendant for the reason heretofore assigned in connection with the lack-of-notice contention.

It is next asserted that the amendatory act is uncertain and incomplete legislation and unlawfully delegates legislative power. This is based upon alleged lack of standards to ascertain the necessity of utilizing the quick-taking provisions. Section 2.1 of the act requires the motion to state the necessity for the taking in the manner requested, and section 2.2(c) requires, as a condition precedent to the court's determination of preliminary compensation, a finding that reasonable necessity exists for taking in such manner. The argument on this point is somewhat vague, but we gather that it is grounded upon two theories. First, that proper standards were not set up for the guidance of the Department of Public Works and Buildings, and second, that the legislature has thus imposed a condition or limitation upon a legislative function, which is to be acted upon by the judiciary but without any standards for the court's guidance. Neither theory has merit. The Department has power to determine whether to exercise the power of eminent domain, and it necessarily follows that it has the discretion to determine when to expedite that power. The courts do have standards fixed by the act by which they may review the steps leading up to the filing of condemnation proceedings. Section 2.1 of the act provides that the petitioner shall show in its motion: (1) the formally adopted schedule or plan of operation for the execution of the project, (2) the situation of the property to which the motion relates with respect to such schedule or plan, and (3) the necessity for taking such property in the manner requested in the motion. The function of a court under the act is to ascertain whether all steps prece-

dent to the exercise of the powers granted to the Department have been taken. See *Zurn* v. *City of Chicago,* 389 Ill. 114; *Bierbaum* v. *Smith,* 317 Ill. 147.

It is urged that the provision in section 2.2(c) of the act, authorizing the court in its discretion to appoint appraisers to evaluate the property and report their conclusions to the court, affords no opportunity of cross-examination and constitutes a denial of due process. The Eminent Domain Act, as amended, gives an owner ample right to be heard on the question of just compensation before a final determination and due process is thereby satisfied. The award is not the preliminary value fixed by the appraisers but is the just compensation fixed by the jury after a full hearing where all parties may be heard.

The defendant points out that section 2.2(a) of the act requires notice to residents of the hearing on the motion for quick taking and makes it discretionary with respect to nonresidents; and that section 2.2(b) requires the court to determine whether the petitioner has authority to exercise the right of eminent domain "if the court has not previously, in the same proceeding," made such determination. It is contended that these provisions constitute unlawful discrimination and denial of due process and equal protection of the law. Without passing upon the question of whether due process requires notice of the hearing on the right to condemn, we again point out that the defendant is a resident, it had notice, and that question is not before the court.

The objection to the language of 2.2(b) of the act is based on the assumption that resident owners are foreclosed from raising questions of petitioner's authority to exercise the right of eminent domain and the like, if the court had previously passed upon such questions with respect to the owners of other parcels in the same proceeding. We interpret this to mean only the elimination of a second

552

determination on behalf of the same owner. Such interpretation eliminates any possible constitutional objection on the point.

Fifteen States have constitutional provisions substantially equivalent to those of Illinois, very similar to the clause in the fifth amendment to the Federal constitution: "nor shall private property be taken for public use, without just compensation." All of those States have "due process" clauses in their constitutions. Each has a "quick taking" act similar to the one here under consideration, and all of such acts have been upheld. This amendatory act is attended by the strong presumption of constitutionality which attaches to every act of the General Assembly.

After careful consideration, we conclude that the Eminent Domain Act, as amended, has ample safeguards to assure the ascertainment and payment of just compensation, and is not violative of the defendant's constitutional rights.

The judgment of the superior court of Cook County is reversed, with directions to overrule the motion to strike the motion for immediate vesting of title and· for further proceedings consistent herewith.

*Reversed and remanded, with directions.*