TIMES MIRROR CABLE TELEVISION OF SPRINGFIELD, INC., Plaintiff-Appellee, v. FIRST NATIONAL BANK OF SPRINGFIELD, as Trustee, *et al.*, Defendants-Appellants.

Fourth District   No. 4—91—0304

Opinion filed November 14, 1991.—Rehearing denied December 16, 1991.

Paul Brown and Harvey M. Stephens, both of Brown, Hay & Stephens, of Springfield, for appellants.

Neil F. Flynn and James M. Morphew, both of Springfield, for appellee.

Richard J. Prendergast, Ltd., of Chicago (Richard J. Prendergast and Joseph E. Tighe, of counsel), for amicus curiae.

JUSTICE KNECHT delivered the opinion of the court:

The plaintiff, Times Mirror Cable Television of Springfield, Inc., sought to install cable television in the Bissel Village Mobile Home Park (Bissel Village) in Springfield, Illinois. The legal owner of Bissel Village, First National Bank of Springfield, trustee under trust No. 2834, the operator of Bissel Village, Capital Supply Co., Inc., and the equitable owner, Elmer Knecht, refused the plaintiff access to the mobile home park. Plaintiff sued the owners and operator of Bissel Village seeking a permanent injunction, which the Sangamon County circuit court granted. On appeal, defendants contend section 11—42—11.1 of the Illinois Municipal Code (cable statute) (Ill. Rev. Stat. 1989, ch. 24, par. 11—42—11.1) violates the United States and Illinois Constitutions. They also argue no evidence of public use was presented and the circuit court erred in finding plaintiff's notice of intent to install cable met statutory requirements. We disagree and affirm.

After receiving requests for cable television from Bissel Village residents, plaintiff notified the defendants of its intent to install cable television facilities at the mobile home park. Defendants responded to plaintiff's letter and denied plaintiff access to Bissel Village. Defendants cited defective notice and their rights under the due process

clause of the United States Constitution as grounds for their refusal to allow plaintiff to install cable services. Defendants made clear any entry on the premises by plaintiff would be treated as trespass.

Plaintiff filed suit seeking a permanent injunction on November 7, 1989. Plaintiff filed an amended complaint on January 2, 1991. The amended complaint alleged plaintiff entered a nonexclusive franchise agreement with the City of Springfield (city) which allowed plaintiff to provide cable television service to the city. The city annexed the property on which Bissel Village is located on April 4, 1972, and the property has remained within city limits. Various Bissel Village residents notified the plaintiff of their desire to receive the cable television services offered by plaintiff. The complaint alleged plaintiff's notification of intent to install cable television at Bissel Village and defendants' refusal to permit entry on the premises. Plaintiff alleged the cable statute precludes owners and operators of residential properties from denying access. Plaintiff sought a permanent injunction, having also alleged irreparable injury and inadequate remedies at law.

Defendants answered and alleged six affirmative defenses which the court struck on February 21, 1991. The court granted plaintiff's motion for summary judgment on the amended complaint on April 1, 1991, having determined the cable statute violates neither the United States nor Illinois Constitution. The court permanently enjoined the defendants from precluding plaintiff from installing cable television facilities at Bissel Village. This appeal followed.

The defendants first argue the cable statute violates the fifth and fourteenth amendments of the United States Constitution (U.S. Const., amends. V, XIV) because it allows physical occupation of property prior to a hearing. Defendants contend a permanent physical occupation of land amounts to a "taking" of the property for which the owner is entitled to just compensation. The United States Supreme Court's decision in *Loretto v. Teleprompter Manhattan CATV Corp.* (1982), 458 U.S. 419, 73 L. Ed. 2d 868, 102 S. Ct. 3164, supports defendants' position regarding compensation. The plaintiff in *Loretto*, owner of an apartment building, sued the cable television company alleging installation of cable services in the building constituted a "taking" without just compensation under State law. A New York statute provided a landlord could not interfere with cable installation or demand payment from tenants in exchange for permitting the installation. Landlords were also precluded from demanding payment from the cable television company in excess of the amount allowed by the State Commission on Cable Television. The landlord could require the cable company or the tenant to pay for cable installation. The New

York Court of Appeals upheld the statute and concluded there was no "taking." The Supreme Court disagreed. "[A] minor but permanent physical occupation of an owner's property authorized by government constitutes a 'taking' of property for which just compensation is due under the Fifth and Fourteenth Amendments of the Constitution." *Loretto*, 458 U.S. at 421, 73 L. Ed. 2d at 873, 102 S. Ct. at 3168.

■ The Illinois statute implicitly recognizes cable installation involves a taking, as it provides a procedure for compensating the property owner. If the property owner seeks compensation in excess of $1, he must serve written notice on the cable television franchisee within 20 days of the date on which he was notified of the franchisee's intent to install cable. The owner then has 30 days to notify the franchisee of the amount of compensation claimed. If the franchisee does not agree to pay the specified amount within a given period of time, the statute provides for a suit by the owner in which a jury may determine just compensation for the decrease in the property's fair market value due to installation of cable television facilities. Thus, the cable statute does not unconstitutionally permit a taking without just compensation.

■ In addition to just compensation, defendants claim the constitution requires a hearing before they are deprived of their property. Defendants cite *Fuentes v. Shevin* (1972), 407 U.S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983, as support for their argument. The *Fuentes* case involved challenges to replevin statutes in Florida and Pennsylvania. The plaintiffs purchased consumer goods pursuant to installment contracts. When they defaulted on payments, the merchants went to local sheriffs, who removed the goods from the consumers. The court invalidated these procedures because they did not provide for predeprivation hearings.

> " '[A]n individual [must] be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.' *Boddie v. Connecticut* [(1971), 401 U.S. 371,] 378-379[, 28 L. Ed. 2d 113, 119, 91 S. Ct. 780, 786] (emphasis in original)." (*Fuentes*, 407 U.S. at 82, 32 L. Ed. 2d at 571, 92 S. Ct. at 1995.)

The extraordinary situations in which the court has permitted a taking without a prior hearing include collecting internal revenue, meeting the needs of a national war effort, protecting against bank failure and protecting the public from misbranded drugs and contaminated food. (*Fuentes*, 407 U.S. at 91-92, 32 L. Ed. 2d at 576-77, 92 S. Ct. at

2000.) Defendants argue there are no extraordinary circumstances present in this case which permit a taking before a hearing.

Defendants concede, however, *Mitchell v. W.T. Grant Co.* (1974), 416 U.S. 600, 40 L. Ed. 2d 406, 94 S. Ct. 1895, modified *Fuentes*. The Louisiana sequestration statute at issue in *Mitchell* allowed a merchant to sequester goods pending the outcome of a suit alleging default on an installment sales contract by the buyer. The statute set forth various requirements for the merchant to get a writ of sequestration and provided for judicial authorization of the writ prior to execution. Unlike Florida and Pennsylvania consumers, buyers in Louisiana were not at the unsupervised mercy of creditors.

> "The Louisiana law provides for judicial control of the process from beginning to end. This control is one of the measures adopted by the State to minimize the risk that the *ex parte* procedure will lead to a wrongful taking. It is buttressed by the provision that should the writ be dissolved there are 'damages for the wrongful issuance of a writ' and for attorney's fees 'whether the writ is dissolved on motion or after trial on the merits.' [Citation.]" (*Mitchell*, 416 U.S. at 616-17, 40 L. Ed. 2d at 419, 94 S. Ct. at 1904-05.)

The court upheld the statute, even though it did not provide for a predeprivation hearing.

The United States Constitution does not require a predeprivation hearing in this case because the statute adequately protects the property owner's due process rights. It clearly provides for just compensation and establishes a procedure whereby the property owner may prove his damages and receive more than the statutory amount of compensation. The statute allows the cable franchisee to proceed with cable installation during resolution of the compensation dispute. This presents no constitutional violation, however, as "all that is required is that a ' "reasonable, certain and adequate provision for obtaining compensation" ' exist at the time of the taking. [Citations.]" (*Williamson County Regional Planning Comm'n v. Hamilton Bank* (1985), 473 U.S. 172, 194, 87 L. Ed. 2d 126, 144, 105 S. Ct. 3108, 3120.) Due process, in the context of a public taking, requires only just compensation, which can be paid after the taking without violating the due process clause. *Muscarello v. Village of Hampshire* (N.D. Ill. 1986), 644 F. Supp. 1016, 1019.

▮ Defendants next contend the cable statute violates sections 2 and 15 of article I of the Illinois Constitution. (Ill. Const. 1970, art. I, §§2, 15.) Article I, section 2, of the Illinois Constitution of 1970 states: "No person shall be deprived of life, liberty or property with-

out due process of law nor be denied the equal protection of the laws." (Ill. Const. 1970, art. I, §2.) Article I, section 15, states: "Private property shall not be taken or damaged for public use without just compensation as provided by law. Such compensation shall be determined by a jury as provided by law." (Ill. Const. 1970, art. I, §15.) Defendants contend the cable statute violates these provisions of the State Constitution because it "does not provide for a preliminary judicial determination of just compensation and deposit of that amount, nor does it provide adequate protection for other property that may be damaged in the taking." The compensation issue has been addressed.

As for the requirement of a hearing to determine just compensation, defendants compare the cable statute to the "Quick-Take" provision of the eminent domain statute (Ill. Rev. Stat. 1989, ch. 110, par. 7—103). The "Quick-Take" provision, applicable only to those entities enumerated in section 7—103 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 7—103), allows the governmental entity to file a motion, after the petition for condemnation has been filed, requesting the immediate vesting of the title sought. Not less than five days after the filing of the "Quick-Take" motion, the court shall set a date for a hearing on the motion. At the hearing, the court makes a preliminary determination of just compensation. Ill. Rev. Stat. 1989, ch. 110, par. 7—104.

In interpreting these statutes and determining their constitutionality, the Illinois Supreme Court stated:

> "[T]he Illinois constitution does not prohibit the taking, possession, and use of private property by the State prior to the fixing and payment of compensation, provided of course, that the authorizing statute adequately safeguards the right of the owner of such property to just compensation therefor." *Department of Public Works & Buildings v. Butler Co.* (1958), 13 Ill. 2d 537, 547-48, 150 N.E.2d 124, 130.

Defendants argue the cable statute does not adequately protect the landowner's rights because it requires no judicial intervention and allows the franchisee to proceed with cable installation even while just compensation is disputed. As discussed earlier, however, the statute adequately protects the owner's right to just compensation as it allows the owner to sue the franchisee if the parties are unable to agree on what constitutes just compensation.

Defendants apparently chose to use the eminent domain analogy because the cable statute allows the municipality to extend its right of eminent domain to the cable television franchisee.

"The municipality may, upon written request by the franchisee of a community antenna television system, exercise its right of eminent domain solely for the purpose of granting an easement right no greater than 8 feet in width, extending no greater than 8 feet from any lot line for the purpose of extending cable across any parcel of property in the manner provided by the law of eminent domain, provided, however, such franchisee deposits with the municipality sufficient security to pay all costs incurred by the municipality in the exercise of its right of eminent domain." Ill. Rev. Stat. 1989, ch. 24, par. 11—42—11(c).

Like eminent domain, the issue presented by the cable statute is not whether the landowner objects to the taking; his preferences and opinions are irrelevant. Instead, the issue is compensation. In granting a community antenna television system franchise, the municipality sanctions cable television access for its residents and grants permission for installation. The statute permitting such a franchise renders the landowner's preferences irrelevant by prohibiting interference with cable installation, even during ongoing compensation disputes.

Because the cable statute recognizes the property owner is entitled to just compensation and establishes a procedure by which the owner can enforce a request for compensation, the statute violates neither section 2 nor section 15 of article I of the Illinois Constitution of 1970.

■ The third issue is whether the cable statute violates article IV, section 13, of the Illinois Constitution. (Ill. Const. 1970, art. IV, §13.) Article IV, section 13, of the Illinois Constitution of 1970 states:

"The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." (Ill. Const. 1970, art. IV, §13.)

Special laws " 'impose a particular burden or confer a special right, privilege or immunity upon a portion of the people of the State.' " (*Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 109-10, 281 N.E.2d 317, 321, quoting *Mathews v. City of Chicago* (1930), 342 Ill. 120, 128, 174 N.E. 35, 39; *Latham v. Board of Education* (1964), 31 Ill. 2d 178, 183, 201 N.E.2d 111, 114.) A general law "is a law that by its terms applies to all who are in a like position, who are 'similarly situated.' " (*County of Bureau v. Thompson* (1990), 139 Ill. 2d 323, 345, 564 N.E.2d 1170, 1181.)

"[A] law is an unconstitutional special law if there is no rational explanation for why that law cannot be applied to all per-

sons or entities in the State, or if there is no rational explanation for why the general law which applies to all other persons and entities in the State should not also be applied to the persons or entity which the law at issue singles out." *County of Bureau,* 139 Ill. 2d at 346, 564 N.E.2d at 1181-82.

Defendants argue the cable statute is a special law because it delegates the power of eminent domain to private corporations. They contend the "Quick-Take" portion of the eminent domain statute (Ill. Rev. Stat. 1989, ch. 110, par. 7—103) is a general law and should apply to cable television franchisees seeking to take property for cable installation. Defendants argue as follows:

"Section 11—42—11.1(c) is a special law in that all property owners subject to a permanent physical occupation by a third party receive a right to just compensation pursuant to the laws of eminent domain except for those property owners required to give up a portion of their property rights bundle to Community Antenna Television Stations. The Cable Access Statute requires the property owners to fulfill substantial burdens before it provides an opportunity to receive just compensation.

Meanwhile, other property owners whose property is taken under the Eminent Domain Act are not required to fulfill those burdens but instead the burden is placed on those taking the property. The application of Section 11—42—11.1(c) to Defendant and all property owners situated similarly as Defendant is improper and the general law of eminent domain clearly could be applied as to Defendant and all individuals similarly situated.

\* \* \*

\*\*\* No rational explanation exists why the Illinois Cable Access Statute cannot rely on the eminent domain proceedings when allowing a corporation a permanent physical occupation of another's property. The statute itself provides such procedure in 11—42—11 but ignores such procedure by enacting a special law in 11—42—11.1(c). Such failure to apply a general law without a rational explanation for the need for a special law therefore dictates the special law unconstitutional."

The cable statute is not a special law. The statute treats all municipalities, cable television franchisees and property owners in the same manner; no person or entity is singled out. (*County of Bureau,* 139 Ill. 2d at 346, 564 N.E.2d at 1181-82.) Nor is the cable statute special legislation because it allows a municipality to grant its right of eminent domain to a cable television franchisee for purposes of ob-

taining an easement. The cable statute does not violate article IV, section 13, of the Illinois Constitution of 1970.

■ Defendants also contend article I, section 15, of the Illinois Constitution of 1970 requires all private property taken for a public use be taken through eminent domain proceedings. Article I, section 15, states: "Private property shall not be taken or damaged for public use without just compensation as provided by law. Such compensation shall be determined by a jury as provided by law." (Ill. Const. 1970, art. I, §15.) The defendants cite *People ex rel. Gutknecht v. City of Chicago* (1953), 414 Ill. 600, 111 N.E.2d 626. The case involved a challenge to amendments to the Blighted Areas Redevelopment Act of 1947 (Ill. Rev. Stat. 1947, ch. 67½, pars. 63 through 91). The statute authorized municipalities, in conjunction with the State Housing Board, to identify slum and blighted areas, acquire the properties, and sell them to developers, in an effort to ease the post-war housing shortage. One of the challenges to the statute claimed it deprived owners of property without due process of law. Specifically, plaintiff objected to a provision allowing comparison of the "fair value" of the land to the tax delinquencies accumulated without notice or hearing. The court responded:

> "[A]s the act makes clear, 'fair value' is relevant only in appraising the extent of tax and special assessment delinquencies, in the course of determining the causes of the unmarketability of an area under consideration. The decision of a condemning body to acquire property by eminent domain is not a taking of the property, and no question of due process is presented. The taking can, of course, only be accomplished by the filing of a petition and the ascertainment and payment of compensation for the property." (*People ex rel. Gutknecht,* 414 Ill. at 616, 111 N.E.2d at 636.)

This case does not support defendants' argument.

Contrary to defendants' assertions, the Illinois Constitution does not require all private property taken for public use be taken through eminent domain proceedings.

■ Defendants' fourth issue is based on their misinterpretation of article I, section 15, of the Illinois Constitution of 1970. As discussed earlier, this section does not require all private property taken for public use to be taken through eminent domain proceedings. Defendants, however, persist in this argument and contend the circuit court erred in granting summary judgment for plaintiff because plaintiff failed to show the private property was to be taken for public use.

"Some courts have been reluctant to interfere with a legislative determination of a public purpose absent a 'clear abuse' of the legislative power. (*Department of Public Works & Buildings v. McNeal* (1965), 33 Ill. 2d 248, 252, 211 N.E.2d 266.) Other courts have held that the determination of whether a given use is a public use so that the right of eminent domain may be exercised is a judicial function. (*People ex rel. Touhy v. City of Chicago* (1946), 394 Ill. 477, 68 N.E.2d 761.) Still other courts have held that what is for the public good and what are public purposes are decided in the first instance by the legislature, which is vested with broad discretion in its determination, but the final determination of whether the use or purpose is within the limits of legislative discretion is a judicial function. *Poole v. City of Kankakee* (1950), 406 Ill. 521, 94 N.E.2d 416." *Lake Louise Improvement Association v. Multimedia Cablevision of Oak Lawn, Inc.* (1987), 157 Ill. App. 3d 713, 715-16, 510 N.E.2d 982, 984.

The Illinois Supreme Court has developed five criteria for determining whether the purpose of the taking is public:

"(1) that it affect a community as distinguished from an individual; (2) that the law control the use to be made of the property; (3) that the title so taken be not invested in a person or corporation as a private property to be used and controlled as private property; and (4) that the public reap the benefit of public possession and use, and that no one exercise control except the municipality." (*Poole v. City of Kankakee* (1950), 406 Ill. 521, 527, 94 N.E.2d 416, 419.)

The final criterion states: "Public use requires that all persons must have an equal right to the use and that it must be in common, upon the same terms, however few the number who avail themselves of it." *Department of Public Works & Buildings v. Farina* (1963), 29 Ill. 2d 474, 478, 194 N.E.2d 209, 212.

The United States Supreme Court did not decide, in *Loretto*, whether cable television serves a public purpose.

"The Court of Appeals determined that [the New York statute] serves the legitimate public purpose of 'rapid development of and maximum penetration by a means of communication which has important educational and community aspects,' 53 N.Y.2d, at 143-144, 423 N.E.2d, at 329, and thus is within the State's police power. We have no reason to question that determination." *Loretto*, 458 U.S. at 425, 73 L. Ed. 2d at 875-76, 102 S. Ct. at 3170.

In 1973, the Illinois Supreme Court held community antenna television systems were not public utilities within the meaning of "An Act concerning public utilities" (Ill. Rev. Stat. 1971, ch. 111²/₃, par. 1 *et seq.*) and, thus, were not subject to the jurisdiction of the Illinois Commerce Commission (ICC). (*Illinois-Indiana Cable Television Association v. Illinois Commerce Comm'n* (1973), 55 Ill. 2d 205, 302 N.E.2d 334.) The ICC had determined cable television was a public utility. Among its findings of fact was the conclusion that " 'The business of providing cable television and other forms of broadband cable communications is an engagement "for public use" in "the transmission of telegraph or telephone messages within this State" ***.' " (*Illinois-Indiana Cable Television Association*, 55 Ill. 2d at 208, 302 N.E.2d at 335.) The Illinois Supreme Court let stand the ICC's findings of fact related to "the nature and elements of cable television and its industry" (*Illinois-Indiana Cable Television Association*, 55 Ill. 2d at 209, 302 N.E.2d at 336), but held the words "telegraph or telephone messages" had to be given their plain and ordinary meanings and, thus, cable television was not a public utility.

Several years later the court decided *Cammers v. Marion Cablevision* (1976), 64 Ill. 2d 97, 354 N.E.2d 353. The plaintiffs, landowners, sued the cable television company seeking a mandatory injunction and damages. They claimed the company installed an underground television cable and an aboveground television cable box on their property without their consent. The circuit court found the company had encroached on plaintiffs' property and issued the injunction. The appellate court agreed there was a trespass but reversed the injunction, concluding it was improper. The supreme court agreed the evidence showed the cable was on a portion of plaintiffs' land subject to a highway easement and agreed they were entitled to compensation. The court affirmed the appellate court's reversal of the injunction. In *dicta*, the court stated:

> "[U]nderground installations which are for the benefit of the public at large and which do not impair the use of the highway have been regarded as falling within the highway easement. (*Barrows v. City of Sycamore* (1894), 150 Ill. 588, 593.) The defendant is not a public utility (*Illinois-Indiana Cable Television Association v. Illinois Commerce Com.* (1973), 55 Ill. 2d 205), however, and its cable television operations benefit the defendant and its customers, rather than the general public. The reasoning of the *Barrows* case is thus not directly applicable." *Cammers*, 64 Ill. 2d at 103, 354 N.E.2d at 356.

More recently, *Lake Louise Improvement Association* involved a challenge to the constitutionality of the cable statute. Plaintiffs sued for declaratory judgment. The circuit court granted a preliminary injunction restraining the cable television company from attempting to install cable. The court also found the cable statute (section 11–42–11.1) unconstitutional because it took private property for a private use and failed to provide adequate safeguards for the taking of private property prior to compensation.

The appellate court concluded the evidence presented as to cable television's provision of educational, civic and political programming "disclosed that the purpose of the proposed taking was a public *** one." (*Lake Louise Improvement Association*, 157 Ill. App. 3d at 716, 510 N.E.2d at 985.) The court refused to decide the case on constitutional grounds because there was no evidence as to the amount of damages, if any, to plaintiffs' property. There was no evidence as to what plaintiffs considered just compensation. "If the ultimate facts show that the installation did not damage the property or the installation, in fact, enhanced the value of the property, there would be no need to determine the constitutional question." *Lake Louise Improvement Association*, 157 Ill. App. 3d at 716-17, 510 N.E.2d at 985.

Plaintiff in this case also contends the cable statute serves a public purpose because cable television provides educational, governmental, and community programming. Additionally, because a municipality can tax a cable television company, it is in the municipality's best interest to allow the cable company to serve as many people in the community as possible. The Illinois Cable Television Association filed an *amicus curiae* brief supporting plaintiff's position.

■ The circuit court did not err in granting summary judgment for plaintiff. The cable statute precludes property owners from interfering with cable installation when it has been requested by tenants. Only compensation is the issue; the statute does not require proof of public use or purpose.

Defendants' final argument contends the notice plaintiff sent, of its intent to install cable at Bissel Village, was legally insufficient because there was no indemnity agreement between the parties. The cable statute provides, in part: "the cable television franchisee constructing or installing such cable television facilities shall agree to indemnify the owner of such real estate for any damages caused by the installation, operation or removal of such cable television facilities and service." (Ill. Rev. Stat. 1989, ch. 24, par. 11–42–11.1(b).) The notice served by plaintiff on the defendants stated:

"Section 11—42—11.1 requires the cable television franchisee constructing or installing cable television facilities to agree to indemnify the owner of any such residential building or real estate for any damage caused by the installation, operation or removal of such cable television facilities and service. Times Mirror Cable Television of Springfield, Inc. hereby agrees to indemnify the owner as required by Section 11—42—11.1."

The circuit court found "there is no genuine issue of material fact that Plaintiff has given valid notice under the Cable Access Statute of its intent to provide cable television services at Bissel Village Mobile Home Park."

Defendants argue the phrase "shall agree" requires the parties reach an indemnity agreement as a condition precedent to the installation of cable services. Otherwise, they argue, the statute would have used the phrase "shall indemnify."

■■ Plaintiff contends defendants' interpretation of the statute ignores its plain meaning and purpose. Plaintiff asserts the purpose of the cable statute is to allow tenants and occupants access to cable television without delay. Requiring the parties enter an indemnification agreement prior to installation would delay access, a result the legislature did not intend.

The statute required the plaintiff agree to indemnify the defendants for damage caused by installation, operation or removal of cable services. The plaintiff agreed to do so in its letter of intent and thus fulfilled this statutory requirement. The statute does not require the parties enter an indemnity agreement. The circuit court did not err in finding plaintiff provided valid notice.

The order of the Sangamon County circuit court is affirmed.

Affirmed.

LUND, P.J., and GREEN, J., concur.