CONTINENTAL CABLEVISION OF COOK COUNTY, INC., Plaintiff-Appellee and Counterdefendant, v. SIDNEY MILLER et al., Defendants-Appellants (Triumvera Homeowners' Association et al., Counterplaintiffs-Appellants).

First District (6th Division)   Nos. 1—91—1873, 1—91—2158 cons.

Opinion filed November 30, 1992.—Rehearing denied December 31, 1992.

Marshall N. Dickler, Ltd., of Arlington Heights (Marshall N. Dickler, Michael R. Ek, and Jeffrey A. Goldberg, of counsel), for appellants.

Richard J. Prendergast, Ltd., of Chicago (Richard J. Prendergast, James Prendergast, Joseph E. Tighe, and Ellen M. Murphy, of counsel), for appellee.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

The defendants are Triumvera Homeowners' Association (Triumvera), a development located in unincorporated Cook County near Glenview, Illinois, which comprises the other defendants, nine different condominium associations, and Sidney Miller, the president of Triumvera. The plaintiff is Continental Cablevision of Cook County, Inc. (Continental), a cable television system operating pursuant to a franchise granted by the Cook County Board. The defendants appeal from an order granting Continental's motion for a preliminary injunction which in part enjoined the defendants from interfering with the servicing of Continental's existing Triumvera residents and an order which conditionally approved a plan to install cable television for one Triumvera resident.

Truimvera has 538 residential units and includes townhouses, midrise apartment buildings and a tower building. Triumvera owns and maintains the common areas of the development; the individual condominium associations are responsible for the common areas located within their respective buildings.

Continental entered into negotiations with Triumvera to provide cable television service at a discount bulk rate. Continental and Triumvera failed to reach an agreement on the bulk rate for cable services. The parties did, however, reach an agreement whereby Continental was allowed to enter onto the common areas of the property, install a cable television system and maintain its equipment and services. In accordance with this agreement, in November 1988, Continental representatives met with Triumvera representatives and plotted the underground cable runs through the common areas of the development. The underground cable work was completed in April 1989. According to the Sidney Miller, Triumvera's president, the association terminated this agreement in a letter sent June 5, 1989, for alleged nonperformance on the part of Continental.

After the agreement was terminated, the parties continued to negotiate over terms, price, and internal wiring of the system; they could not reach an agreement. On November 16, 1990, Miller sent a letter to Continental demanding that Continental remove all of its equipment from the development. A Continental employee testified that he was supervising the installation of cable services when he was

asked to leave the Triumvera development sometime in November 1989.

The defendants also took other actions to discourage residents from continuing to receive or order Continental's cable services. The Triumvera board notified certain residents by letter that they must have all their cable equipment removed from their units until Continental was granted a license. The defendants threatened these residents with legal action if they did not comply with the development's instruction. The defendants also copied Continental's marketing materials, stamped them with the phrase "Disregard this Notice" and distributed the materials to all unit owners.

On December 5, 1990, Continental filed a three-count complaint, seeking a declaratory judgment, a temporary restraining order, and preliminary and permanent injunctive relief, barring the defendants from interfering with Continental's servicing of Triumvera residents who wanted cable television. The complaint also sought to bar the defendants from interfering with Continental's construction of a cable television system at the development. Another count of the complaint sought damages in excess of $15,000.

On December 7, 1990, Continental filed a motion for a temporary restraining order. ‹A hearing was held on December 12, 1990, and Judge Robert Sklodowski denied Continental's motion for a temporary restraining order; he held that such an order sought to modify the status quo and obtain mandatory relief; however, he also said that Continental could have access to the development property to service its existing customers and equipment.

Continental filed a second motion for a temporary restraining order on December 21, 1990, alleging that its employees were ordered to vacate the Triumvera property when they were servicing existing customers, despite Judge Sklodowski's order and that the defendants had threatened legal action to a resident if she continued to receive cable service from Continental. Judge Edward Hofert, who took over the case after Judge Sklodowski resigned from the bench, denied Continental's request for a temporary restraining order; he said that the harm suffered by Continental at that point was minimal considering all of the surrounding circumstances.

On January 3, 1991, Triumvera and the condominium associations filed a counterclaim seeking injunctive relief prohibiting further entry on the common areas of the development by Continental. The counterclaim also sought a declaratory judgment that Continental breached its agreement and that the cable access statute (Ill. Rev. Stat. 1989, ch. 34, pars. 5—1095, 5—1096) is unconstitutional.

On January 8, 1991, Judge Hofert heard arguments on whether the individual unit owners had to be joined as necessary parties. He determined that the owner of a unit which needs to be accessed for installation of cable services is a necessary party and must be joined. He also determined that all of the unit owners were to receive notice of the proposed plan of installation and be invited to join the proceedings.

On February 25, 1991, the judge began to hear testimony on Continental's motion for a preliminary injunction. During this hearing Paul Carson, a Continental employee in its commercial development department, testified that about 13 Triumvera residents were interested in receiving cable television service. Carson also testified that the company had sent out interest surveys and received written requests for service, but that most of the requests for service came by phone.

Continental's plant manager, Steve Fedeczko, detailed Continental's proposed plan of installation of a cable television system at the development. Fedeczko stated that he was responsible for all aspects of design of the cable systems for Continental.

Continental's plan of installation included attaching plastic troughs or moldings to some of the condominium buildings. Cable would be run inside the troughs. When an individual owner requested service, a hole would be drilled through the outer wall of the unit, and a cable would be run from the owner's unit to the cable in the trough. In some buildings, cable would be run in the basement and attached to the walls or the ceilings of the basement. On cross-examination, Fedeczko testified that the implementation of this plan was not necessary for Continental to continue service to its existing customers, but some of this installation would be necessary when a nonsubscribing Triumvera resident requested cable.

No testimony on Continental's motion for a preliminary injunction was heard between February 26 and April 16. During the interim, Continental filed its third motion for a temporary restraining order. On April 5, 1991, the judge denied Continental's motion.

On May 6, 1991, the hearing on the motion for a preliminary injunction resumed. Bruno Aiello, a Triumvera resident, testified he wanted to receive cable television. He had received and completed an interest survey sent out by Continental. Also admitted into evidence were certain surveys sent out by Continental and completed by residents which showed that these people were interested in receiving cable television service.

On May 22, 1991, the trial judge issued a preliminary injunction enjoining the defendants from interfering with Continental's servicing of its existing customers and equipment or with Continental's marketing or promotional activities. The judge found that Continental had a protectable interest in providing cable service to requesting customers by virtue of the cable access statute and the franchising agreement. The judge also held that under the cable access statute the residents of the development were entitled to receive cable service from Continental.

The judge denied Continental's request to implement the installation plan proposed at the preliminary injunction hearing. He said that Continental's plan was excessive and did not bear any relationship to the needs of the 1 to 14 people who had expressed interest in receiving cable services.

The judge did enjoin the defendants from interfering with Continental's installation of cable services for Aiello. The judge ruled that for future installation Continental was required to give seven days' notice before any installation; the notice had to detail who requested the cable service and the date of the installation. The judge retained jurisdiction to insure that the parties agreed upon an equitable plan of installation.

On July 5, 1991, over the defendants' objection, the judge entered a second order conditionally approving an installation plan to install cable television for a second Triumvera resident, Roy Beaty, who had requested cable service. As a condition of installation, Continental was to post a $5,000 bond to insure that the defendants received just compensation and to protect against potential damage caused by the installation. The order also required Continental to give the defendants two days' notice before installation and to indicate the proposed location of installation, giving the defendants an opportunity to determine whether the installation would disrupt the building. Subsequent to the filing of this appeal, the defendants have purchased a satellite television system.

The defendants have assigned several grounds for reversal of the judge's orders. We will first discuss the defendants' claim that the judge erred in conducting a hearing before passing on the defendants' motion to dismiss the complaint brought under section 2—619 of the Code of Civil Procedure. Ill. Rev. Stat. 1989, ch. 110, par. 2—619.

■ The defendants' motion to dismiss is not in the record,[1] but we have read the plaintiff's response to the motion and the defendants' reply. It is apparent that the defendants' motion to dismiss raised all the arguments which the defendants raised at the hearing and have raised in this court. The trial judge passed on all the arguments raised, except the constitutionality of the cable access statute. He deferred from passing on the constitutional question on the basis of *Lake Louise Improvement Association v. Multimedia Cablevision of Oak Lawn, Inc.* (1987), 157 Ill. App. 3d 713, 510 N.E.2d 982, which both parties here apparently accept as authority for the proposition that the constitutionality of a statute may *never* be decided on a motion for a preliminary injunction. We do not accept so broad a proposition, and we do not believe that the *Lake Louise* opinion supports it. The court simply said that "[a]s a general rule, an attack on the constitutionality of a statute should not be resolved upon application of a temporary injunction." (157 Ill. App. 3d at 717.) The court reversed a finding of the trial judge that the act was unconstitutional, not on the merits, but because the judge's ruling might have been unnecessary. The effect of *Lake Louise*, however, is academic because we have determined that the cable access statute is constitutional. That being so, the fact that the judge passed on all the other arguments raised by the defendants in their motion to dismiss leads to the conclusion that no prejudice inured to the defendants when the case proceeded to a hearing without a ruling on their motion to dismiss. Consequently, any claim of error on this point is rejected.

■ We agree that the judge did not abuse his discretion by abstaining from passing on the constitutional question, and we agree with the plaintiff that we would be justified in refraining from passing on the question as well. However, the question has been raised by the defendants, at least in the supplemental brief, and we will address it for the sake of finality. The cable access statute provides that where a county grants a franchise to a television company to construct, operate or maintain a cable television system within a designated franchise area, no property owner may forbid or prevent any occupant of any building from receiving cable television service from the television company. Ill. Rev. Stat. 1989, ch. 34, par. 5—1096.

Where a cable franchisee intends to install cable facilities, it must send notice of its intention to the property owner. The notice "shall

---

[1] We are also unable to find any answer to the plaintiff's complaint or an answer to the petition for preliminary injunction in the record.

include the address of the property, the name of the cable television franchisee, and information as to the time within which the owner may give notice, demand payment as just compensation and initiate legal proceedings." Ill. Rev. Stat. 1989, ch. 34, par. 5—1096(c).

The statute sets forth the procedures available to the property owner, including trial by jury, through which the property owner may obtain just compensation for the "taking of property." Ill. Rev. Stat. 1989, ch. 34, pars. 5—1096(c), (d).

The statute expressly forbids a property owner seeking compensation, including a condominium association, from delaying the right of the cable franchisee to construct or install cable television facilities even while the property owner is pursuing any legal claims. Ill. Rev. Stat. 1989, ch. 34, par. 5—1096(e).

■ It would serve no purpose to repeat and answer all the arguments advanced by the defendants in their claim that the statute is unconstitutional. All those arguments were raised and rejected by the Fourth District Appellate Court in *Times Mirror Cable Television of Springfield, Inc. v. First National Bank* (1991), 221 Ill. App. 3d 340, 582 N.E.2d 216, which upheld the constitutionality of the cable access statute. We agree with the reasoning of the Fourth District Appellate Court and its holding. We note that, although the First District Appellate Court in *Lake Louise* declined to reach the constitutional issue, it commented unfavorably on the trial judge's decision that the statute was unconstitutional. In particular, the *Lake Louise* court stated that the Illinois Constitution does not "preclude the prior taking of private property for a public use when provisions for just compensation for the property and damages assure the landowner that he will receive just compensation." *Lake Louise*, 157 Ill. App. 3d at 717, citing *Department of Public Works & Buildings v. Butler Co.* (1958), 13 Ill. 2d 537, 150 N.E.2d 124.

The defendants filed a supplemental brief, citing two cases from other jurisdictions in support of their claim that the statute is unconstitutional. (*City of Lansing v. Edward Rose Realty, Inc.* (1992), 192 Mich. App. 551, 481 N.W.2d 795; *Cable Holdings of Georgia, Inc. v. McNeil Real Estate Fund VI, Ltd.* (11th Cir. 1992), 953 F.2d 600.) Neither case is persuasive here. In *City of Lansing* the Michigan Appellate Court, applying a two-part test established by Michigan courts, determined that the owner's land was taken for a private purpose. Both *Times Mirror* and the *dicta* in *Lake Louise* are contrary to the holding of *City of Lansing*. In *Cable Holdings*, the Eleventh Circuit Court of Appeals addressed the interpretation of a section of the Cable Communications Policy Act, 47 U.S.C. §521 *et seq.* (1988), which

allowed access by cable companies to easements on private property where the owner of the property dedicated the easement to the general use of utilities. The court of appeals' holding was based on the district court's misinterpretation of the statute involved, not the unconstitutionality of the statute. Moreover, the court of appeals stated that the district court's interpretation would render the statute unconstitutional because the interpretation would permit permanent physical occupation of the owner's property *without just compensation.*

■ The defendants also argue that the judge's interpretation of the statute was in conflict with section 14.3 of the Condominium Property Act (Ill. Rev. Stat. 1989, ch. 30, par. 314.3), which provides that a 50% vote of the condominium unit owners may authorize the grant of an easement for the purpose of laying television cable. The defendants insist that section 14.3 is actually a threshold requirement to the cable access statute; only after this 50% threshold has been met, may an individual unit owner request cable television service. We disagree with the defendants' argument.

First, the just compensation provision in the cable access statute would be rendered meaningless by the defendants' reading. If the easement statute were actually a threshold requirement, an easement would be granted when this 50% requirement was satisfied by the condominium association. As such, no taking could occur because the easement would have already been voluntarily conveyed to the cable franchisee. Moreover, there would be no need to determine just compensation because no taking had occurred. While the defendant contends that section 14.3 would be rendered meaningless if this threshold interpretation is not followed, it is actually the cable access statute, which expressly includes condominium associations, which would be rendered meaningless if the defendants' interpretation were followed.

Second, the purpose of section 14.3 is to cure a potential title defect which occurs when a condominium association attempts to grant an easement. (See Ill. Ann. Stat., ch. 30, par. 314.3, Historical & Practice Notes, at 205 (Smith-Hurd Supp. 1991).) As the common elements of a condominium are owned in common by all the members of a condominium, an agreement of *all* the unit owners would be necessary for an easement to be granted to a cable television franchise. As the Historical and Practice Notes indicate, the statute allows the granting of an easement in this particular situation because obtaining an easement in the condominium situation would be "virtually impossible" as 100% approval would be needed, "a next to impossible

task." Ill. Ann. Stat., ch. 30, par. 314.3, Historical & Practice Notes, at 205 (Smith-Hurd Supp. 1991).

The defendants contend that two situations demonstrate that the cable access statute renders the easement statute meaningless. First, they question why an association would go through the trouble of gaining 50% of the vote when one party can merely request cable. Second, the defendants argue that a failed vote could be negated by a single owner requesting cable. The defendants' argument ignores the difference between a compensable taking and an easement. The end result of the two statutes is the same in that cable service is installed on the property. The difference, however, is the process.

Under the cable access statute the property is taken, used for the purposes enumerated in the statute and just compensation paid; it is irrelevant whether the condominium association opposes this. Under the easement statute, the precise conveyance and amount of consideration can be negotiated. The easement could be broader than the purposes enumerated in the statute; the easement could allow the condominium association to shape the conditions of the easement. Moreover, the easement statute would allow a condominium to grant a cable television service an easement without having to deal with the adversarial problems inherent in the cable access statute.

The interpretation offered by Continental is reasonable. Under this interpretation, the easement statute is discretionary and the condominium association could decide whether or not to grant the easement. Accordingly, the two statutes serve two different purposes and interest groups. The cable access statute insures access to cable television for all residents; the easement statute cures the potential title defect problem inherent in the granting of an easement by a condominium.

■ The defendants next contend that the trial judge's ruling allowed Continental to execute a taking of property. Citing *Department of Public Works & Buildings v. Ryan* (1934), 357 Ill. 150, 191 N.E.2d 259, the defendants contend that the right of eminent domain can be exercised by a corporation or a department of government only upon a specific grant of the legislature and that section 5—1096 is not a specific grant of such a right. This argument was rejected in *Times Mirror*. The court noted that the statute "implicitly recognizes cable installation involves a taking." (*Times Mirror*, 221 Ill. App. 3d at 344.) The court further noted that the Illinois Constitution does not require that every taking be accomplished through eminent domain proceedings, only that just compensation be provided. 221 Ill. App. 3d at 349.

■ The defendants next argue that in order to exercise the power of eminent domain, Continental must have submitted a written request to Cook County so that Cook County could exercise its powers of eminent domain in order to effect a taking under section 5—1095 of the statute. That section provides in part:

"The County Board may, upon written request by the franchisee ***, exercise its rights of eminent domain solely for the purpose of granting an easement *** from any lot line for the purpose of extending cable *across* any parcel of property in the manner provided for by the law of eminent domain." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 34, par. 5—1095.

We make the same response to this argument that we made to the defendants' argument that the Condominium Property Act provided a threshold requirement to the cable access statute. A reading of section 5—1095(c) advanced by the defendants would make many of the provisions contained in section 5—1096 potentially inapplicable. The just compensation provisions would not be necessary because compensation is provided for in eminent domain proceedings. Notice provisions would be irrelevant when the power granted under section 5—1095(c) was exercised; no notice would be required. A more reasonable reading of section 5—1095 indicates that the provision applies to easements across parcels of property owned by noncable subscribers. To require the type of written request described in section 5—1095(c) and a full eminent domain hearing upon every application by a condominium resident would be unreasonable.

■ The defendants also maintain that the trial judge allowed an improper "Quick-Take" as defined in section 7—103 of the Illinois Code of Civil Procedure. (Ill. Rev. Stat. 1989, ch. 110, par. 7—103.) Section 7—103 provides for the procedure to be followed by specifically identified public bodies to take property in an eminent domain proceeding before just compensation is finally determined. Cable companies are not named in section 7—103. The defendants seem to argue that because the legislature did not amend section 7—103 to include cable companies, the judge exceeded his authority by granting a "Quick-Take" to the plaintiff by an injunction order. We would agree with the defendants if the cable access statute did not exist.

In *Times Mirror*, the property owner compared the cable access statute to section 7—103 and argued that the cable access statute did not adequately protect the land owner's rights because it required no judicial intervention and allowed the franchisee to proceed with cable installation even while just compensation was being disputed. The court rejected the argument because "the statute adequately protects

the owner's right[s] [of] just compensation as it allows the owner to sue the franchisee if the parties are unable to agree on what constitutes just compensation." *Times Mirror*, 221 Ill. App. 3d at 340.

■■ We turn to the defendants' claim that the plaintiff failed to establish the necessary elements to support a preliminary injunction. To obtain a preliminary injunction a party must show the following: (1) a clearly ascertainable right which needs protection; (2) that the party would suffer irreparable injury without the protection of the injunction; (3) the absence of an adequate remedy at law; and (4) a likelihood of success on the merits. (*American Telephone & Telegraph Co. v. Village of Arlington Heights* (1988), 174 Ill. App. 3d 381, 387, 528 N.E.2d 1000.) The party seeking the injunction bears the burden of proving these elements by a preponderance of the evidence. *In re Marriage of Weber* (1989), 182 Ill. App. 3d 212, 218-19, 537 N.E.2d 1024.

The granting of injunctive relief is within the discretion of the trial judge. (*Regional Transportation Authority v. Burlington Northern, Inc.* (1981), 100 Ill. App. 3d 779, 784, 426 N.E.2d 1143.) The reviewing court must restrict itself to a determination of whether the trial judge correctly exercised its broad discretionary powers. (*Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 690, 329 N.E.2d 414.) The test for determining whether an abuse of this discretion is present is whether the judge's decision is against the manifest weight of the evidence. *Jefco Laboratories, Inc. v. Carroo* (1985), 136 Ill. App. 3d 793, 483 N.E.2d 999.

The standard for establishing a sufficient legal right is not difficult. The party seeking relief need only raise a fair question as to the existence of the right claimed. (*Weber*, 182 Ill. App. 3d at 219.) The right to conduct a business may be sufficient to warrant the issuance of an injunction. *Morrison Metalweld Process Corp. v. Valent* (1981), 97 Ill. App. 3d 373, 422 N.E.2d 1034.

■■ The defendants' argument that the plaintiff failed to establish a clearly ascertainable right is that the evidence was insufficient to show that the requirements of the statute had been met. We disagree. The statute provides that a request from a single tenant is sufficient to give the franchisee the right to access. The last paragraph of subparagraph (a) is phrased in the singular—if *an* occupant requests service. (Ill. Rev. Stat. 1989, ch. 34, par. 5—1096 (a).) The defendants implicitly concede that proof that one occupant requests service triggers the application of the statute. The defendants do not reasonably consider the testimony of Aiello or the request for service by Ray Beaty. Aiello and Beaty are obviously interested in receiving cable services,

and as the duly franchised cable service, Continental has a right to install and maintain their service. We are not persuaded by the defendants' attempt to denigrate Aiello's testimony because he expressed an interest in cable service after the lawsuit was filed and because his response at trial was allegedly elicited by a leading question by the judge.

The defendants next contend that the judge abused his discretion in issuing the preliminary injunction because the plaintiff did not suffer an irreparable injury and that if any injury was suffered, Continental has an adequate remedy at law.

To show irreparable injury, the moving party "need not show injury that is beyond repair or compensation in damages, but rather, need only show transgressions of a continuing nature." (*Greenspan v. Mesirow* (1985), 138 Ill. App. 3d 294, 300, 485 N.E.2d 1196.) In this case, the efforts by the defendants to deny Continental access were a continuing transgression. Without the injunctive relief granted by the trial court, Continental would still be suffering the same injury.

A remedy at law is adequate if it is " 'clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy.' " *American Telephone & Telegraph Co. v. Village of Arlington Heights* (1988), 174 Ill. App. 3d 381, 388, 528 N.E.2d 1000, quoting *K.F.K. Corp. v. American Continental Homes, Inc.* (1975), 31 Ill. App. 3d 1017, 1021, 335 N.E.2d 156.

It is difficult to determine the extent of the injury or loss suffered by Continental. The nature of the cable television business, which relies heavily on a service component, coupled with the fact that Continental is basically attempting to enter a new area, would make damage calculations extremely difficult. Moreover, even if Continental's immediate loss could be ascertained, the potential loss of future business is generally incapable of adequate compensation and would require a finding that no adequate remedy of law exists. *Eagle Books, Inc. v. Jones* (1985), 130 Ill. App. 3d 407, 411, 474 N.E.2d 444.

The defendants cite several cases where injunctive relief was denied because monetary damages were available. These cases primarily involved the payment of rent and overtime compensation where monetary damages can be easily calculable. Even if Continental's ultimate relief were in the form of monetary damages, injunctive relief is not necessarily improper. (*K.F.K. Corp. v. American Continental Homes, Inc.* (1975), 31 Ill. App. 3d 1017, 1021, 335 N.E.2d 156.) That Continental's complaint also seeks monetary damages does not foreclose injunctive relief.

The defendants rely most heavily on the case of *Best Coin-Op, Inc. v. Old Willow Falls Condominium Association* (1983), 120 Ill. App. 3d 830, 458 N.E.2d 998, where the court determined that money damages provided an adequate remedy at law. *Best Coin*, however, which was an affirmance of a denial of injunctive relief, dealt with a breach of contract claim. The only potential uncertainty was the loss of potential profits. The court concluded that these profits could be ascertained with reasonable certainty because the concern in question, a laundry, was being operated by one of the parties and that the losses could be easily calculated by reference to that party's gross receipts.

The defendants' claim that the plaintiff has failed to prove a likelihood of success on the merits is based on the same ground as their claim that the plaintiff failed to prove a clearly ascertainable right: insufficiency of the evidence to establish that one resident had requested service. We reject this argument for the same reason we previously advanced.

We conclude that the plaintiff has sufficiently established the elements necessary to sustain the issuance of a preliminary injunction.

The defendants' last claim is that the preliminary injunction was improper because it allegedly granted mandatory relief, determined controverted rights and granted the ultimate relief requested.

■■■ The determination of whether an injunction is mandatory or prohibitory should be determined by the effect the injunction has on the parties involved. (42 Am. Jur. 2d *Injunctions* §17 (1969).) In determining whether an injunction is mandatory or prohibitory, "it is necessary to consider what will have to be done in order to comply with it." An injunction is considered prohibitory when "the thing complained of results from present and continuing affirmative acts, and the injunction merely orders the defendant from doing those acts." (42 Am. Jur. 2d *Injunctions* §17 (1969).) Simply put, a mandatory injunction is one which commands the performance of a positive act. *John Deere Co. v. Hinrichs* (1962), 36 Ill. App. 2d 255, 183 N.E.2d 309.

■■■ We judge that the defendants are not required to perform any act and neither is Continental. Continental gets a preliminary right of access; the defendants are enjoined from interfering with that right. Neither party is *required* to perform any action under the court's order, and as such, the injunction should not be considered mandatory. The defendants have actively interfered with Continental's right of access; therefore, an injunction enjoining such action should be considered prohibitory.

The defendants also contend that the injunction was improper because it allegedly altered the status quo between the parties. As the defendants note, the purpose of a preliminary injunction is to provide relief to the injured party and preserve the status quo until the trial on the merits is held. In *American Telephone & Telegraph Co. v. Village of Arlington Heights* (1988), 174 Ill. App. 3d 381, 528 N.E.2d 1000, the plaintiff telephone company filed an action seeking injunctive relief when the defendant halted the plaintiff's installation of cable under the defendant's street. The plaintiff had complied with the public utilities statute in question by sending the defendant the requisite notice. The trial judge issued a preliminary injunction allowing the defendant to continue its installation.

■■■ The court affirmed the issuance of part of the injunction with this observation:

> "Illinois courts have consistently defined the status quo as 'the last actual, peaceful, non-contested status which preceded the pending controversy.' [Citations.] Although the general practice is to preserve the status quo by keeping all actions at rest, 'it sometimes happens that the status quo is a condition not of rest, but of action, and the condition of rest is exactly what will inflict the irreparable injury on the complainant.' [Citation.] Here, plaintiffs were legally engaging in the installation of their cable system when defendants put a stop to any further construction." (174 Ill. App. 3d at 387-88.)

Similarly, in the case before us, the plaintiff was operating under a valid statute before the defendants interfered with its operation. The status quo was a condition of action and was preserved by the issuance of the preliminary injunction.

■■■ We disagree that the judge granted the ultimate relief requested by Continental. The judge's order provides certain restrictions which show that the preliminary injunction did not grant the ultimate relief. First, Continental was required to post bond which is not required under the statute. The bond gives the defendants greater protection than the cable access statute because it apparently provides insurance against damage caused, regardless of whether the defendants claim just compensation. Second, Continental must have a hearing and propose a plan of installation for a single customer hookup. Under the statute, Continental is not required to provide as stringent a notice as was required under the judge's order. The imposition of the bond, hearing, and additional notice requirements evidence more restrictive relief than the ultimate relief Continental seeks un-

der the statute. In addition, the plan that was approved by the judge was more restrictive than the plan submitted by the plaintiff.

■■■ To the defendants' claim that the judge erred in deciding controverted rights we have a brief answer: The judge decided the controverted rights because the defendants asked him to. The judge had before him the relatively simple issue of whether the plaintiff had established rights under the cable access statute, which expressly grants authority to a cable franchisee to install cable and maintain television service even while legal action to enforce the franchisee's claim is pending. It was the defendants who raised several arguments against the plaintiff, all of which the judge decided against the defendants. The defendants should not now be heard to complain. Their complaint really is not that the judge decided controverted rights; their complaint is that he decided the issue of controverted rights against the defendants.

For all these reasons, we conclude that the judge did not abuse his discretion by the issuance of the temporary injunction and approval of the plan to install cable to Beaty. The judgment of the circuit court is affirmed.

Judgment affirmed.

McNAMARA and RAKOWSKI, JJ., concur.